OPINION
 

 Opinion by
 

 Chief Justice MORRISS.
 

 Some twenty-four years after the divorce of Ella Mae Ferguson Jones and Scott Ferguson,
 
 [1]
 
 their divorce decree has been supplemented by a quartet of QDROs
 
 [2]
 
 in a quarrel over Ferguson’s retirement funds. We are presented with the resulting quandary.
 

 The 1980 divorce decree between Jones and Ferguson, predating QDROs, described generally how Ferguson’s retire
 
 *213
 
 ment funds were to be divided once he retired. As Ferguson neared retirement, Jones’ efforts to obtain her desired portion of those funds has resulted in four successive QDROs. From the trial court’s last QDRO (QDRO Four), providing Jones seven forty-sevenths of Ferguson’s retirement funds, Jones appeals. We affirm QDRO Four because we hold (1) we have jurisdiction to decide this appeal, and (2) QDRO Four properly clarified the intent of the original division of the retirement funds. First, we examine the contents of the decree and the four QDROs. Then we address the issues.
 
 [3]
 

 The Orders
 

 The April 18, 1980, divorce decree awards Jones that percentage of Ferguson’s retirement funds “equal to seven (7) divided by the number of years worked for the State of Texas, upon his retirement.” This language was as clear as could be expected, considering that Ferguson’s retirement date was then unknown.
 
 [4]
 
 As originally drafted, the decree bore a numerator of twelve and one half, but that was changed by hand to “seven.”
 
 [5]
 

 QDRO One, dated October 2, 2002, provided that Ferguson’s retirement distribution was to be multiplied “by a fraction, the numerator of which is 7 and the denominator of which is the total number of creditable years of service that [Teachers’ Retirement System] determines has been acquired by [Ferguson] at the time of distribution.” This QDRO was entered at Jones’ request and grants her precisely the relief she requested, using her language. No appeal was taken from that order, and no other motion was filed that would extend the plenary power of the trial court. QDRO One thus became final thirty days later, November 2, 2002.
 

 Each of QDRO Two, dated December 23, 2002, and QDRO Three, dated April 17, 2003, spends in excess of a fully typewritten page describing how Ferguson’s retirement is to be divided. Neither QDRO Two nor QDRO Three can be correctly described as clarifying either the original decree or QDRO One, as the two later QDROs provide markedly different and more complex division formulas and address new and previously unstated conditions and situations.
 

 QDRO Four, dated December 22, 2003, provided that Jones be paid seven forty-sevenths of Ferguson’s retirement benefit. QDRO Four is the subject of this appeal.
 

 1. We Have Jurisdiction To Decide this Appeal
 

 Ferguson first suggests that no appeal can be taken from QDRO Four. He reasons that QDRO Two (signed December 23, 2002) constituted the final judgment of
 
 *214
 
 the trial court and that the motion for new trial thereafter filed was untimely (which would be true), thus the trial court’s plenary power terminated before any further orders could be entered, and any subsequent order is a nullity.
 

 A trial court has continuing jurisdiction to enter a QDRO permitting payments of retirement benefits when they become payable.
 
 See
 
 Tex. Fam.Code Ann. § 9.101 (Vernon 1998). The trial court may render such an order if none has been previously entered. See Tex. Fam.Code Ann. § 9.103 (Vernon 1998). If the QDRO in place does not “satisfy the requirements of a [QDRO] ... the court retains continuing, exclusive jurisdiction over the parties and their property to the extent necessary , to render” one. Tex. Fam.Code Ann. § 9.104 (Vernon 1998).
 

 Although these sections allow a trial court to create a QDRO where none exists, or to correct language in a QDRO that renders it defective, they do not permit a court to substantively change a property division. A court may not amend, modify, alter, or change the division of property made or approved in the decree of divorce. Tex. Fam.Code Ann. § 9.007(a) (Vernon 1998);
 
 Marshall v. Priess,
 
 99 S.W.3d 150, 157 (Tex.App.-Houston [14th Dist.] 2002, no pet.);
 
 see also McPherren v. McPherren,
 
 967 S.W.2d 485, 490 (Tex.App.-El Paso 1998, no pet.);
 
 Dechon v. Dechon,
 
 909 S.W.2d 950, 956 (Tex.App.-El Paso 1995, no writ). Altering the substantive division of property made in a final divorce decree is beyond the power of the trial court, and such a change is unenforceable. Tex. Fam. Code Ann. § 9.007(b) (Vernon 1998);
 
 In re Marriage of McDonald,
 
 118 S.W.3d 829, 832 (Tex.App.-Texarkana 2003, pet. denied).
 

 Section 9.007 of the Texas Family Code is typically read in tandem with Section 9.008.
 
 See
 
 Tex. Fam.Code- Ann. § 9.008 (Vernon 1998). Under Section 9.008, a QDRO that is not defective, but is so abstruse as to be difficult to implement or enforce, is treated as requiring clarification, and is not handled under the subchapter controlling the creation or implementation of a QDRO.
 
 Shanks v. Treadway,
 
 110 S.W.3d 444, 449 (Tex.2003);
 
 see Marshall,
 
 99 S.W.3d at 155-62.
 
 [6]
 

 Thus, Section 9.103 of the Texas Family Code allows creation of a QDRO, Section 9.104 allows correction of a QDRO that is defective, and Section 9.008 allows clarification of a QDRO that is technically adequate but for some reason needs to be made clearer.
 

 We conclude QDRO Four clarifies QDRO One. The purpose of clarification is to enforce compliance with the original division of property. In this case, QDRO Four clarified the benefit division of QDRO One after Ferguson’s retirement date occurred and the exact formula became known. Therefore, under Section 9.008, clarification was available, and the trial court had the authority to render QDRO Four.
 

 
 *215
 
 QDRO One ordered payment of seven divided by the years of creditable service earned at the time of distribution. Motions to clarify or otherwise change the outcome were filed. QDRO One was not completely clear, because the complete numbers were not supplied. QDROs Two and Three both did much more than just clarify QDRO One, and thus cannot be valid orders of the trial court. QDRO Four provides exact numbers for calculation. Thus, QDRO Four is indeed the final, clarified order, and the appeal is properly before this Court. We now turn to Jones’ issues raised on appeal.
 

 2. QDRO Four Was a Proper Clarification of the Intent of the Original Division of the Retirement Funds
 

 Jones attacks QDRO Four in two principal ways, by attacking its specified numerator, seven, and then attacking the QDRO more generally, but essentially addressing its specified denominator, forty-seven. We address each in turn. Before issuing QDRO Four, the trial court stated in a letter to counsel that, after re-reviewing the pertinent cases, it determined it was required to use the formula — seven forty-sevenths — derived from the original decree. We agree.
 

 a. The Numerator
 

 Jones contends the trial court erred in QDRO Four by using the wrong number as the numerator. The original decree bears a typewritten numerator, “twelve and one half,” which Jones says was mysteriously struck by hand, and “seven” substituted in its place. Jones points to her own 1980 testimony to show twelve and one half was the numerator she “agreed to,” and says she did not remember the number seven being discussed or written into the judgment. She argues that the handwritten numerator in the decree was necessarily invalid and should not have been used by the trial court in “clarifying” the decree with QDROs One or Four.
 
 [7]
 

 But, while the change to the decree is obvious, there is no evidence the change was made by anyone other than the trial court while it had the power to do so. Therefore, the presumption of the decree’s validity stands, with “seven” as the numerator.
 
 See Hart v. Calkins Mfg. Co.,
 
 623 S.W.2d 451, 452 (Tex.App.-Texarkana 1981, no writ) (judgment with penned edit, presumed valid);
 
 see also Cook v. Cook,
 
 888 S.W.2d 130, 132 (Tex.App.-Corpus Christi 1994, no pet.) (entered judgment is presumptively as intended by court).
 

 Also, a party to a suit is charged by law with notice of all orders and judgments rendered in the suit.
 
 K & S Interests, Inc. v. Tex. Am. Bank/Dallas,
 
 749 S.W.2d 887 (Tex.App.-Dallas 1988, writ denied). The traditional rule has been that, once a trial court properly gains jurisdiction over a party, that party is expected to keep informed of the proceedings and any judgment rendered in the case.
 
 Id.; Thomason v. Freberg,
 
 588 S.W.2d 821, 825 (Tex.Civ.App.-Corpus Christi 1979, no writ). Although this typically addresses whether a party has notice of proceedings in a case, it also applies, necessarily, to the contents of the judgment.
 

 If an appeal is not timely perfected from a divorce decree, res judicata bars a
 
 *216
 
 subsequent collateral attack on the decree.
 
 See Baxter v. Ruddle,
 
 794 S.W.2d 761, 762 (Tex.1990). The decree is final and has been for over twenty years. We are neither authorized by law nor inclined by equity to authorize a collateral attack on its explicit wording under these facts. Therefore, QDRO Four’s numerator “seven” stands.
 

 b. The Denominator
 

 Jones next argues that QDRO Four is improper because it does not effectuate the terms of the decree. As we have noted, the decree generally defines the denominator as “the number of years [Ferguson] worked for the State of Texas, upon his retirement.” Even when we overcome the inapt reference to Ferguson’s working for the State, there is still a quandary regarding the denominator. Ferguson actually worked as a Texas teacher, and thus accumulated service under the Texas Teachers’ Retirement System, for thirty-seven years. He had previously worked for ten years as a teacher in Kansas, so he was entitled to, and did subsequently, purchase ten years’ additional service credit. His retirement benefits are thus based on forty-seven years of creditable service.
 

 Jones wants the formula’s denominator reduced to reflect only the
 
 actual
 
 time Ferguson worked in Texas, thus excluding the ten years’ creditable service he purchased. But, while Jones wants to exclude the ten years from the denominator, she wants to share in Ferguson’s
 
 whole
 
 monthly benefit — its size enhanced with the additional ten years purchased — rather than share in just the amount payable for his thirty-seven years of Texas school employment.
 

 We will not, and cannot, in this instance, take the decree as Jones suggests, for a number of reasons. The decree refers to the award as being a “percentage of [Ferguson’s] retirement.” It then measures that amount according to the number of years worked. That is simply another way of saying that Jones is entitled to a percentage of Ferguson’s retirement and attempting to define the amount.
 
 [8]
 

 QDRO One, in defining the numerator as “seven” and the denominator as the “number of creditable years of service,” was a proper clarification of the decree’s intent. And, even if it was not a proper clarification, it was issued at Jones’ request, employed her requested language, went unchallenged, and became final.
 

 We believe that, in QDRO Four, the trial court correctly expressed the intent of the decree and QDRO One, and thus was correct in defining the denominator as forty-seven, Ferguson’s creditable years of service.
 

 We affirm the judgment of the trial court.
 

 [1]
 

 . At the time of their divorce, Jones and Ferguson had been married twenty-five years, and had lived ten of those years in Kansas and fifteen in Texas.
 

 [2]
 

 . In this opinion QDRO refers to a qualified domestic relations order.
 

 [3]
 

 .Both parties have noted potential difficulties because the record in this case may be incomplete. Jones asked the court reporter to prepare a transcription of an extensive list of possible hearings that may have occurred during the fifteen-month time period that this cause was before the trial court in connection with the four QDROs that were entered. The evidentiary hearing preceding the entry of QDRO Four constitutes the only reporter’s record before this Court. In this particular case, however, even if there were evidentiary hearings that were not transcribed, they are not necessary. Our review in this case is to determine only whether the written QDROs conform to the divorce decree. Although the parties disagree about
 
 which
 
 number should be used both as numerator and denominator, they do not disagree about what those numbers actually are or the source from which they come. This opinion is decided based on the record before us.
 

 [4]
 

 . We note the decree’s inapt reference to Ferguson’s working "for the State of Texas” and understand it as intending to reference, instead, his working "as a teacher in the State of Texas.”
 

 [5]
 

 . We discuss that change later in this opinion.
 

 [6]
 

 . Clarifying orders may more precisely specify the maimer of carrying out a previously ordered property division so long as the substantive division of the property is not altered.
 
 See McPherren,
 
 967 S.W.2d at 490;
 
 Dechon,
 
 909 S.W.2d at 956. Clarification also requires a finding, express or implied, that the original form of the division of property lacks sufficient specificity to be enforced by contempt. Tex Fam.Code Ann. § 9.008(b);
 
 In re Marriage of Alford,
 
 40 S.W.3d 187, 189 (Tex.App.-Texarkana 2001, no pet.). If a divorce decree is unambiguous, the court has no authority to alter or modify the original disposition of property.
 
 Haworth v. Haworth, 795
 
 S.W.2d 296, 300 (Tex.App.-Houston [14th Dist.] 1990, no writ);
 
 see McDonald,
 
 118 S.W.3d at 832.
 

 [7]
 

 . Although handwritten changes to contracts are typically initialed to show acceptance by the parties, and while initialing changes to a judgment would be better practice;
 
 see Lopez v. State,
 
 No. 07-98-0104-CR, 1999 WL 239892 (Tex.App.-Amarillo Apr.23,1999, no pet.) (not designated for publication); we find no requirement that edits to a court's judgment require any initials, even when the judgment is based on an underlying agreement of the parties.
 

 [8]
 

 . We also recognize with some discomfort that, were we to try to enforce the letter of the decree, Jones' share would be "undefined,” as mathematicians say when an attempt is made to divide by zero. Ferguson never worked for the State of Texas, and his retirement is not payable by the State of Texas. He was an educator, and his retirement comes from the Teachers' Retirement Fund. Thus, if we read and enforced that language literally, we would insert a zero in the denominator, and the entire division would thus fail, and the entire division would thus fail.