Opinion issued December 21, 2006












 

In The

Court of Appeals

For The

First District of Texas






NO. 01-04-00427-CV






BRENDA JOYCE GAINOUS, Appellant


V.


THOMAS EARL GAINOUS, Appellee






On Appeal from the 246th District Court

Harris County, Texas

 Trial Court Cause No. 1994-18001






OPINION ON REHEARING

 Appellant, Brenda Joyce Gainous ("Brenda"), has moved for rehearing of the
Court's August 24, 2006 judgment. Appellee, Thomas Earl Gainous ("Thomas"), has
filed a response to Brenda's motion. After due consideration, we grant Brenda's
motion for rehearing and withdraw our opinion and judgment dated August 24, 2006. 
We issue this opinion and judgment in their place.

 Brenda appeals from the judgment denying her motion for enforcement or,
alternatively, motion for clarification of the 1995 divorce decree between herself and
her former husband, Thomas. We determine (1) whether some of Brenda's challenges
were collateral attacks, which could be raised after the trial court's plenary power had
expired, on a post-divorce qualified domestic relations order ("QDRO") and (2)
whether the divorce decree awarded Brenda half of Thomas's benefits under the
Houston Firemen's Relief and Retirement Fund ("the Fund"). (1) We reverse the
judgment and remand the case.

 Background


 Brenda and Thomas were married on April 14, 1973. On June 19, 1978,
Thomas began working for the Houston Fire Department. He then began
participating in the Fund, which was a defined-benefit plan. The couple was
divorced, by consent decree, on October 9, 1995, before Thomas was eligible to retire
from the fire department. The decree provided, in pertinent part, that each party was
awarded "[o]ne-half (1/2) of the Houston Firemen's Relief and Retirement Fund
standing in the name of THOMAS E. GAINOUS." Neither party appealed the
divorce decree, and no post-judgment motion challenging the decree appears in the
record. 

 On January 25, 1996, the trial court entered a QDRO to effectuate the decree's
division of the Fund's benefits. The record does not reveal who sought the QDRO,
but it does show that Brenda sent the QDRO to the Fund. The QDRO provided, in
pertinent part, as follows:

 4. Plan Information. On the 9th day of October, 1995, [Thomas]
had 16 years 11 months and 19 days of service under the Plan. 
[Thomas's] total contributions as of such date are $37,967.47. 
[Thomas's] average monthly salary (as defined in the Plan) as of
such date is $3,163.79.


 5. Benefit Award. The Court hereby awards to [Brenda] 50% of
each payment otherwise payable to [Thomas] from the Plan after
the date specified in Paragraph 4, but only with respect to the
portion of such payment that is based on [Thomas's] accrued
benefit as of such date (taking into account only contributions as
of such date). If the payment to [Thomas] is a refund of
contributions, the benefit calculated as of the date specified in
Paragraph 4 shall be adjusted on a proportionate basis for any
earnings attributable to such benefit under the terms of the Plan
from such date to the date of distribution. This Paragraph does
not award [Brenda] any interest in any monthly amounts credited
to any DROP [deferred retirement option plan] account
established for [Thomas] under the terms of the Plan. This
award applies to each type of benefit distribution under the Plan
(including a service, deferred, or disability retirement pension,
and a withdrawal of contributions) other than a distribution from
any DROP account established on behalf of [Thomas]. The
provisions of this Paragraph 5 shall be construed to fix the amount
(but not the type) of [Thomas's] benefit that is subject to division
and payment to [Brenda] as of the date set forth in Paragraph 4,
and shall be determined under the terms of the Act [Tex. Rev.
Civ. Stat. Ann. art. 6243e.2(1) (Vernon Supp. 2006)] in effect
on such date. The award to [Brenda] herein shall not be
increased by [Thomas's] additional contributions, service
accruals, or salary increases occurring after the date set forth in
Paragraph 4.


 6. DROP Account. Notwithstanding any other provision of this
Order, [Brenda] shall not share in any portion of the
contributions to or distributions from a DROP account
established under the Plan on behalf of [Thomas].


 7. Cost of Living Adjustments. The amount payable to [Brenda]
under Paragraph 5 shall not be increased by any cost of living
adjustments made to [Thomas's] benefit after the date set forth in
Paragraph 4.


 8. Time and Manner of Payment. The Plan shall make payments to
[Brenda] of the amount specified in Paragraph 5, if, as, and when
payments are made to [Thomas]. . . .


 . . . .


 11. Limitations. This Order and the award to [Brenda] herein is
expressly made subject to the following provisions:


 . . .



 g. This Order shall not be interpreted to award [Brenda] any
future benefit increases that are provided or required by
the Legislature.


 h. In the event that after the date of this Order, the amount of
any benefit otherwise payable to [Thomas] is reduced by
law, the portion of benefits payable to [Brenda] shall be
reduced by a proportionate amount.


(Emphasis added.) Neither party appealed the QDRO, and no post-judgment motion
challenging the QDRO appears in the record. 

 On June 19, 1998, upon 20 years of service with the fire department, Thomas
became eligible to retire. See Tex. Rev. Civ. Stat. Ann. art. 6243e.2(1), § 4(a)
(Vernon Supp. 2006). Rather than retire, however, Thomas elected to participate in
the Fund's Deferred Retirement Option Plan ("DROP") on November 1, 1998. See
id. § 5 (Vernon Supp. 2006). Under the Fund's DROP, Thomas could, for up to 10
years, continue as an active employee while having an amount equal to his service-pension benefit, (2) plus continued pension contributions from his salary, credited to a
"notional" DROP account, with the account's total sum to be distributed to or held
for him upon retirement. See id. By the end of October 2003, Thomas's DROP
balance with the Fund was $157,033.72. (3) 

 In approximately August 2003, Thomas retired. Shortly before then, on June
25, 2003, Brenda filed a motion for enforcement or for clarification of the divorce
decree and later amended that motion. Among other things, Brenda argued that (1)
the QDRO "reduced and materially altered" the division of the Fund benefits by
excluding her from sharing in any portion of the DROP payments; (2) "a conflict"
thus existed "between the provisions of the [divorce] decree and the QDRO," so that
the divorce decree's award to her of a portion of the Fund's retirement benefits "may
not be specific enough to be enforceable by contempt" and should be "clarified"; and
(3) she was also entitled to receive a portion of four other Fund benefits, which were
not technically Thomas's service-pension distributions, but which Thomas would
receive at retirement from the Fund as part of his overall benefit. In all, Brenda
sought an order clarifying that she was to receive not only her portion of the service-pension benefit that Thomas received (to which Thomas has never disputed that
Brenda is entitled), but also a portion of the following Fund benefits, the dispute over
which forms the basis of this appeal:

 the DROP funds, including a two percent increase in benefits
accrued for each year of Thomas's DROP participation, but
excluding bi-weekly contributions that Thomas continued to
make to the DROP account while working during DROP
participation; (4)


 an annual three percent cost-of-living adjustment ("COLA"),
applied to her portion of Thomas's service-pension benefits and
DROP account balance;


 a one-time, lump-sum payment of $5,000 that Thomas would
receive upon retirement; (5)


 a $150 monthly supplemental payment, which Thomas would
begin receiving upon retirement; (6) and


 an annual supplemental payment benefit, also called the "13th-benefit payment," which was intended to help pensioners of low
income, and which Thomas could begin receiving upon
retirement. (7)


 Thomas responded below that (1) res judicata and estoppel barred Brenda's
claim to the DROP funds and the COLAs because the 1996 QDRO, which she had
not appealed, expressly precluded her receiving any of these benefits; (2) Government
Code chapter 804 precluded her receiving a portion of the DROP funds; (8) (3)
Government Code chapter 804 also precluded her receiving a portion of any post-divorce COLAs; (9) and (4) the Legislature did not create the remaining three benefits
that she sought until after the divorce date, precluding their being community
property.

 In January 2004, after having held an evidentiary hearing, the trial court denied
Brenda's motion to enforce or to clarify and rendered a take-nothing judgment against
her. At the time of the hearing, Brenda was receiving approximately $500 per month
from the Fund, while Thomas was receiving approximately $2,000. Brenda filed a
motion seeking a new trial, reconsideration, or reformation. The trial court denied the
motion. The trial court did not enter fact findings or legal conclusions.

Standard of Review


 We review the trial court's ruling on a post-divorce motion for enforcement or
clarification of a divorce decree under an abuse-of-discretion standard. See In re
Marriage of McDonald, 118 S.W.3d 829, 832 (Tex. App.--Texarkana 2003, pet.
denied). When a trial court makes no separate findings of fact or conclusions of law,
we must draw every reasonable inference supported by the record in favor of the trial
court's judgment. See Wordford v. Stamper, 801 S.W.2d 108, 109 (Tex. 1990). 
Additionally, "the judgment of the trial court must be affirmed if it can be upheld on
any legal theory that finds support in the evidence." Lassiter v. Bliss, 559 S.W.2d
353, 358 (Tex. 1977), overruled on other grounds, Cherne Indus., Inc. v. Magallanes,
763 S.W.2d 768 (Tex. 1989). Nonetheless, in cases in which the appellate record
includes the reporter's record, the trial court's implied fact findings are not conclusive
and may be challenged for legal and factual sufficiency of the evidence supporting
them. See Tucker v. Tucker, 908 S.W.2d 530, 532 (Tex. App.--San Antonio 1995,
writ denied). We review implied legal conclusions de novo. See State v. Heal, 917
S.W.2d 6, 9 (Tex. 1996).

The DROP Funds


 Under issues one, two, and three, Brenda challenges the trial court's denial of
her motion to enforce or to clarify the divorce decree to the extent that that ruling
denied her any portion of Thomas's DROP funds.

A. The Terms of the DROP

 The Fund's summary plan description, like the statute on which the plan was
based, provided that DROP participation, which was available to firefighters with 20
or more years of participation, would allow them "to accumulate, for up to ten (10)
years, a separate sum of money toward retirement while still working as an active
employee" and described that sum as a "cash amount for retirement to be paid in
addition to your [the employee's] monthly retirement benefit." (10) See Tex. Rev. Civ.
Stat. Ann. art. 6243e.2(1), § 5(a)-(c) (Vernon Supp. 2006). Both the statute and the
plan provided that the DROP participant's monthly service-pension benefit amount
would be established as of the DROP entry date (which would also be considered the
date of service termination upon actual retirement later on), with the value of that
monthly service-pension benefit being credited to the DROP account, along with all
interest and the firefighter's pension contributions, earned during continued
employment. See id. § 5(b), (c), (i) (Vernon Supp. 2006). That is, as the Fund's
summary plan description advised, 

 When you enroll [in the DROP], you 'lock in' your service and benefit
levels as of the date your participation in the DROP takes effect. . . .
While you work, the Fund credits the value of your monthly retirement
benefit (based on your service as of the date you entered the DROP) into
a notional DROP account. . . . As long as you participate, the value of
the retirement benefit calculated for you upon entry into the DROP and
your employee contribution amounts are credited to your account each
month, and your account earns interest.

See id. § 5(b), (c).

 The statute and plan also provided that, upon the firefighter's actual retirement,
the DROP account balances could be distributed in a lump sum, and the plan
provided, alternatively, that the DROP sums could be left in the DROP account to
accrue interest, less an administrative fee. See id. § 5(a), (e) (Vernon Supp. 2006). 
Pursuant to both the statute and the plan, the firefighter's monthly benefit at
retirement would be increased two percent for every year of DROP participation, to
be applied to the original service-pension benefit upon actual retirement, but not to
be added to the DROP account. See id. § 5(a). In addition, the statute provided that

 A member who has made a DROP election is not classified as retired,
eligible to be paid, or eligible to accrue or to receive any benefit that is
accrued or received by a member who has terminated active service . . .
unless the member who has made the DROP election has terminated
active service.


Id. § 5(o) (Vernon Supp. 2006). 

B. The QDRO's Provisions Concerning the DROP

 The QDRO expressly precluded any portion of the DROP funds' being paid to
Brenda. Like the QDRO, the Fund's policies and procedures provided that DROP
"[c]ontributions (both monthly benefit payments and member contributions) to the
member's DROP account [would] not be affected by a QDRO applicable to the
member." (11) 

C. Brenda's Collateral Attack

 The QDRO, which was entered after the trial court's plenary power over the
divorce decree had expired, clearly precluded Brenda's receiving any portion of the
DROP funds. A QDRO is a final, appealable order. See, e.g., Reiss v. Reiss, 118
S.W.3d 439, 441 (Tex. 2003) (considering appeal of post-divorce QDRO). Brenda
did not appeal the QDRO. Res judicata applies to final divorce decrees and, under
the same logic, applies to final post-divorce orders. See Baxter v. Ruddle, 794
S.W.2d 761, 762 (Tex. 1990) (divorce decree); see also Tex. Fam. Code Ann. §§
9.103, 9.104 (Vernon 1998). Moreover, Brenda had the QDRO approved by the Fund
and relied on the QDRO for approximately seven years before her challenge. 
Accordingly, estoppel might also normally bar her challenge. Cf. Waite v. Waite, 150
S.W.3d 797, 803 (Tex. App.--Houston [14th Dist.] 2004, pet. denied) (noting, on
appeal of divorce decree, that party who accepts judgment's benefits is estopped from
challenging judgment by appeal).

 1. Brenda's Arguments

 Brenda recognizes these potential obstacles, but contends that she may
nonetheless challenge the QDRO because hers is a collateral attack, which is not
barred by res judicata or estoppel. Brenda reasons as follows: (1) the divorce decree
awarded her a contingent interest in Thomas's service-pension benefits, which
included the DROP funds as a matter of law; (2) the QDRO conflicted with the
divorce decree by impermissibly restricting the division of Thomas's service-pension
benefits by excluding the DROP funds from that property division; (3) the Family
Code prohibits post-divorce orders that amend, modify, alter, or change the divorce
decree's property division; and (4) the QDRO is void for impermissibly having done
so. (12) 

 2. The Law of Collateral Attack

 A collateral attack does not attempt to secure the rendition of a single, correct
judgment in place of a former one, but, instead, seeks to avoid the effect of a
judgment through a proceeding brought for some other purpose. Armentor v. Kern,
178 S.W.3d 147, 149 (Tex. App.--Houston [1st Dist.] 2005, no pet.). To prevail in
a collateral attack, a party to the original judgment must show that the complained-of
judgment is void, not simply voidable. Id. A judgment is void only when the court
rendering judgment "'had no jurisdiction of the parties, no jurisdiction of the subject
matter, no jurisdiction to enter the judgment, or no capacity to act as a court.'" Saudi
v. Brieven, 176 S.W.3d 108, 113 (Tex. App.--Houston [1st Dist.] 2004, pet. denied)
(quoting Cook v. Cameron, 733 S.W.2d 137, 140 (Tex. 1987)). If the challenged
order is only voidable, as opposed to void, the collateral attack fails. Ramsey v.
Ramsey, 19 S.W.3d 548, 552 (Tex. App.--Austin 2000, no pet.) (expressly stating
same in collateral attack of divorce decree); see Armentor, 178 S.W.3d at 149.

 "'Subject-matter jurisdiction may not be conferred by consent, waiver, or
estoppel at any stage of a proceeding.'" Saudi, 176 S.W.3d at 113 (quoting Tourneau
Houston, Inc. v. Harris County Appraisal Dist., 24 S.W.3d 907, 910 (Tex.
App.--Houston [1st Dist.] 2000, no pet.)). One may thus raise a collateral attack
challenging a void order at any time, and res judicata is not a bar to the attack. See
id. (reasoning that lack of subject-matter jurisdiction is fundamental error that may
be recognized by appellate court sua sponte or by party for first time on appeal); see
also State ex rel. Latty v. Owens, 907 S.W.2d 484, 486 (Tex. 1995) (indicating that
one need not appeal void judgment). In a collateral attack, the challenged order is
presumed valid, and the party challenging it has the burden to show that it is void. 
See Stewart v. USA Custom Paint & Body Shop, Inc., 870 S.W.2d 18, 20 (Tex. 1994)
(presumption); Armentor, 178 S.W.3d at 149 (burden). 

 3. The Validity of the QDRO's DROP Provisions

 If Brenda is correct that the QDRO is void to the extent that it barred her from
sharing in a portion of the DROP funds, then she may challenge those QDRO
provisions even at this late time and despite having relied on the QDRO previously. 
Otherwise, her challenge fails because of res judicata and estoppel. Therefore, we
examine whether the QDRO's challenged provisions are void.

 a. The Trial Court's Jurisdiction to Clarify and to Enforce the
Divorce Decree


 A court that rendered a divorce decree generally retains continuing subject-matter jurisdiction to clarify and to enforce the decree's property division. Tex. Fam.
Code Ann. §§ 9.002, 9.008 (Vernon 1998). Specifically, the court has continuing
jurisdiction to "render further orders to enforce the division of property made in the
decree of divorce . . . to assist in the implementation of or to clarify the prior order." 
Id. § 9.006(a) (Vernon 1998). Likewise, "[o]n a finding . . . that the original form of
the division of property is not specific enough to be enforceable by contempt," the
court has continuing jurisdiction to "render a clarifying order setting forth specific
terms to enforce compliance with an original division of property." Id. § 9.008(b)
(Vernon 1998). 


 However, there are limitations on the enforcement and clarification powers of
the court that rendered the divorce decree. For example, "[t]he court may specify
more precisely the manner of effecting the property division previously made if the
substantive division of property is not altered or changed." Id. § 9.006(b) (Vernon
1998) (emphasis added). More specifically, the Family Code provides:

 (a) A court may not amend, modify, alter, or change the division of
property made or approved in the decree of divorce or annulment. An
order to enforce the division is limited to an order to assist in the
implementation of or to clarify the prior order and may not alter or
change the substantive division of property.


 (b) An order under this section that amends, modifies, alters or
changes the actual, substantive division of property made or approved
in a final decree of divorce or annulment is beyond the power of the
divorce court and is unenforceable.


Id. § 9.007(a)-(b) (Vernon 1998) (emphasis added); see Shanks v. Treadway, 110
S.W.3d 444, 449 (Tex. 2003).

 Thus, the court that rendered the divorce decree (or any other final order
dividing property) also retains continuing, exclusive jurisdiction to render an
enforceable QDRO (or similar order) "permitting payment of pension, retirement
plan, or other employee benefits divisible . . . to an alternate payee or other lawful
payee." Tex. Fam. Code Ann. § 9.101(a) (Vernon 1998). A party may petition the
court for a QDRO in two circumstances: (1) the court has not previously issued a
QDRO or similar order permitting payment of benefits from a pension, retirement, or
other employee-benefits plan or (2) the plan administrator (or person acting in
equivalent capacity) has determined that a previously entered QDRO does not satisfy
the requirements for a QDRO. Id. §§ 9.103, 9.104 (Vernon 1998); see McKnight v.
Trogdon-McKnight, 132 S.W.3d 126, 132 (Tex. App.--Houston [14th Dist.] 2004,
no pet.) (refusing to affirm entry of amended QDRO when original QDRO did not
conflict with terms of divorce decree). Furthermore, like a final divorce decree, a
final QDRO may be clarified under Family Code section 9.008. In re Marriage of
Jones, 154 S.W.3d 225, 228 (Tex. App.--Texarkana 2005, no pet.) ("Section 9.008
allows clarification of a QDRO that is technically adequate but for some reason needs
to be made clearer.").

 A QDRO is a species of post-divorce enforcement or clarification order. See
Shanks, 110 S.W.3d at 449 (indicating same by holding, "[A] court 'may not amend,
modify, alter, or change the division of property made or approved in the decree of
divorce.' . . . The district court was therefore without authority to enter a QDRO
altering the terms of the decree by limiting [former wife] to [an interest less than that
awarded under the divorce decree].") (quoting Tex. Fam. Code Ann. § 9.007(a)); In
re Marriage of Jones, 154 S.W.3d at 228 (indicating same by concluding, "Although
[Family Code sections 9.101, 9.103, and 9.104] allow a trial court to create a QDRO
where none exists, or to correct language in a QDRO that renders it defective, they
do not permit a court to substantively change a property division. A court may not
amend, modify, alter, or change the division of property made or approved in the
decree of divorce."). Therefore, as with any post-divorce enforcement or clarification
order, a QDRO may not amend, modify, alter, or change the division of property
made or approved in the decree of divorce or annulment. See Shanks, 110 S.W.3d at
449; In re Marriage of Jones, 154 S.W.3d at 228; Pate v. Pate, 874 S.W.2d 186, 189
(Tex. App.--Houston [14th Dist.] 1994, writ denied); see also Tex. Fam. Code Ann.
§ 9.007(a).

 The threshold issue is, thus, whether the trial court is without subject-matter
jurisdiction to enter a post-divorce order that violates Family Code section 9.007 by
amending, modifying, altering, or changing the divorce decree's property division
because, if the court lacks subject-matter jurisdiction to enter such an order, then that
order is void. See Saudi, 176 S.W.3d at 113. Conversely, if the trial court has
subject-matter jurisdiction to enter such an order, then that order is erroneous and
voidable, but not void. See id.; Ramsey, 19 S.W.3d at 552. 

 Section 9.007(b) provides that orders amending, modifying, altering, or
changing the divorce decree's property division are "beyond the power of the divorce
court," and the section itself is entitled "Limitation on Power of Court to Enforce." 
Tex. Fam. Code Ann. § 9.007(b) (emphasis added). Similarly, when describing
section 9.007's limitation on post-divorce enforcement and clarification, case law
employs terms like "power," "jurisdiction," and "authority." (13) These terms indicate
matters of subject-matter jurisdiction. See Reiss v. Reiss, 40 S.W.3d 605, 613-14 &
n.8 (Tex. App.--Houston [1st Dist.] 2001) (indicating that these and similar terms
indicate jurisdiction), rev'd on other grounds, 118 S.W.3d 439 (Tex. 2003). 
Moreover, by their very nature, Family Code sections 9.002, 9.006, 9.008, 9.101,
9.103, and 9.104 provide for limited, post-judgment jurisdiction that may be invoked
only in particular circumstances, rather than for plenary, original jurisdiction. Cf.
Helton v. R.R. Comm'n of Tex., 126 S.W.3d 111, 118 (Tex. App.--Houston [1st Dist.]
2003, pet. denied) (holding, in considering nature of statutory prerequisites to suit for
judicial review from administrative ruling, that "[i]f a statutory requirement 'defines,
enlarges, or restricts the class of cause the [trial] court may decide or the relief the
court may award,' the requirement is jurisdictional.") (quoting Sierra Club v. Tex.
Natural Res. Conservation Comm'n, 26 S.W.3d 684, 688 (Tex. App.--Austin 2000),
aff'd on other grounds, 70 S.W.3d 809 (Tex. 2002)). Accordingly, we hold that
section 9.007 is jurisdictional and that orders violating its restrictions are void. 

 b. The Divorce Decree's Division of Thomas's Retirement
Benefits in the Fund, Including DROP Funds


 For the above reasons, we must next determine whether the QDRO's DROP
provisions violated Family Code section 9.007 by conflicting with the divorce
decree's division of Thomas's retirement-related benefits in the Fund. That is, we
must determine whether the divorce decree's division of these benefits included
DROP funds, so that the QDRO impermissibly precluded Brenda from receiving them
at any time. If these provisions of the QDRO and the divorce decree conflict, then
the QDRO's DROP provisions are void and unenforceable; Brenda may maintain a
collateral attack to challenge them; Brenda is entitled to the portion of these monies
awarded her in the divorce decree; and the trial court could enter a clarifying order
so providing. In contrast, if these provisions of the QDRO and divorce decree do not
conflict, then the QDRO's DROP provisions are valid; Brenda's collateral attack
against them will fail; Brenda is not entitled to any portion of the DROP funds; and
the trial court did not abuse its discretion in denying her motion to enforce or to
clarify for that reason.

 "When interpreting a divorce decree, courts apply the general rules regarding
construction of judgments." Shanks, 110 S.W.3d at 447. "Judgments should be
construed as a whole to harmonize and [to] give effect to the entire decree." Id. "'[I]f
the decree, when read as a whole, is unambiguous as to the property's disposition, the
court must effectuate the order in light of the literal language used.'" Id. (quoting
Wilde v. Murchie, 949 S.W.2d 331, 332 (Tex. 1997)). "If the decree is ambiguous,
the court should review the record along with the decree to aid in interpreting the
judgment." Id. "[W]hether a divorce decree is ambiguous is a question of law." Id.

 The divorce decree awarded Brenda "[o]ne-half (1/2) of the Houston Firemen's
Relief and Retirement Fund standing in the name of THOMAS E. GAINOUS." 
Nothing in the plain language of the divorce decree excluded benefits such as DROP
funds from the division of Thomas's retirement-related benefits in the Fund. 
Moreover, the decree provides that Brenda receive half of the "Houston Firemen's
Relief and Retirement Fund standing in the name of THOMAS E. GAINOUS," not
half of just the service-pension benefits standing in the name of Thomas E. Gainous. 
(Emphasis added.) This language is broad enough to give Brenda an interest in
Thomas's Fund benefits like the DROP funds. 


 In fact, this language is broad enough to award Brenda half of all of Thomas's
benefits in the Fund, not just those that could be considered community property. 
The Texas Supreme Court has generally adopted the following formula for
determining a non-employee spouse's community-property award of the employee
spouse's defined-benefit plan when the latter began plan participation during
marriage, but retired after divorce: 50% x [(number of months married and in plan)
÷ (number of months in plan at time of retirement)] x (monthly benefit that employee
would have received at divorce date, whether then eligible to retire or not). See Berry
v. Berry, 647 S.W.2d 945, 947 (Tex. 1983) (modifying apportionment formula in
Taggart v. Taggart, 552 S.W.2d 422 (Tex. 1977)). This formula excludes post-divorce increases in the employee spouse's retirement benefits--such as raises,
promotions, services rendered, and contributions--that are the employee spouse's
separate property because they are attributable to his continued employment after
divorce. See Phillips v. Parrish, 814 S.W.2d 501, 505 (Tex. App.--Houston [1st
Dist.] 1991, writ denied). In awarding Brenda "[o]ne-half (1/2) of the Houston
Firemen's Relief and Retirement Fund standing in the name of THOMAS E.
GAINOUS," the divorce decree did not adopt a Berry formula. Rather, the divorce
decree awarded Brenda half of all of Thomas's retirement-related benefits from the
Fund, without the type of qualification that Berry requires. That is, the divorce
decree's award to Brenda of Thomas's Fund benefits necessarily--albeit
improperly--included some of Thomas's separate-property benefits in the Fund, i.e.,
half of his separate-property, post-divorce benefits attributable to his continued
employment. (14) See Reiss, 118 S.W.3d at 442 (holding that divorce decree, which
provided that non-employee spouse "shall receive fifty percent (50%) of such
retirement or pension benefit to which [employee spouse] is entitled" unambiguously
awarded non-employee spouse half of total retirement benefits, rather than half of
community-property portion of those benefits, despite decree's repeatedly and
expressly reciting elsewhere that pension benefits were "community property" and
that court was dividing "community property"); (15) see also Shanks, 110 S.W.3d at
447-48 (in concluding that unappealed divorce decree, which provided that non-employee spouse was to receive "a 'pro rata' interest . . . of any and all sums received
or paid to [employee spouse] from such pension or retirement plan," unambiguously
awarded non-employee spouse half of total retirement benefits, rather than half of
community-property portion of those benefits, court reasoned that "the trial court
awarded [the non-employee spouse] an interest in all sums received under such plan,
not an interest of presently accrued benefits under such plan") (emphasis in original). 
A division awarding a spouse the other spouse's separate property is unconstitutional
and erroneous, but not void. See Reiss, 118 S.W.3d at 443. That mistake could have
been corrected in a direct appeal, but it was not; it cannot be corrected 10 years after
the fact. See id.

 We disagree with Thomas that the phrase "standing in the name of THOMAS
E. GAINOUS" can be construed to mean "on the day of divorce" and thus may be
read to preclude the DROP funds from Brenda's award simply because Thomas was
not then eligible to elect to receive them, i.e., he did not then have 20 years of service. 
Even if contingent benefits' unvested status during marriage could somehow be
equated with their non-existence during marriage, (16) this decretal language does not
mean what Thomas claims. Rather, "standing in the name of THOMAS E.
GAINOUS" modifies "the Houston Firemen's Relief and Retirement Fund," so that
the decree awards Brenda an interest only in Thomas's retirement account funds. The
phrase is not the equivalent of "on the day of divorce." When no one appeals a
divorce decree, courts must generally enforce its unambiguous provisions as written,
and those provisions favor Brenda. See Shanks, 110 S.W.3d at 447; see also Reiss,
118 S.W.3d at 442. 

 We further disagree with Thomas that the absence in the divorce decree of
language such as "if, as, and when received by Thomas" indicated that the decree was
intended to divide only those Fund benefits existing on the divorce date. The Shanks
court recently concluded that phrases like that quoted immediately above are not
terms of art evidencing an intent to value a pension plan at the time of receipt, rather
than at the time of divorce; instead, they merely reflect the contingent nature of the
interest awarded, not that interest's value. See Shanks, 110 S.W.3d at 449 n.7. 
Accordingly, the lack of this phrase does not indicate an intent either to value
Brenda's award as of the divorce date or to award her only a portion of the benefits
extant on that date, but merely acknowledges that the divided benefit might never
come to fruition. See id.

 We hold that the divorce decree unambiguously included the DROP funds in
its award to Brenda of "[o]ne-half (1/2) of the Houston Firemen's Relief and
Retirement Fund standing in the name of THOMAS E. GAINOUS." Because the
QDRO precluded Brenda from receiving any portion of Thomas's DROP funds at any
time, the QDRO impermissibly altered the decree's property division and was void
to the extent that it did so. See Tex. Fam. Code Ann. § 9.007(b). Because the
QDRO's provision excluding the DROP funds from Brenda's award was void,
Brenda could properly challenge it by collateral attack, and res judicata and estoppel
did not bar her challenge. 

D. Disposition

 For these reasons, we hold that the trial court abused its discretion by
misconstruing the divorce decree as not having divided Thomas's DROP funds and,
therefore, that the court also abused its discretion by denying Brenda's motion to
enforce or to clarify to the extent that she sought a portion of Thomas's DROP funds. 
We sustain issues one through three to the extent that they challenge the trial court's
refusal to enter an order enforcing or clarifying the divorce decree's award to her of
a portion of Thomas's DROP funds.

The COLAs


 Also under issues one, two, and three, Brenda challenges the trial court's denial
of her motion to enforce or to clarify to the extent that that ruling denied COLA
increases to her portion of Thomas's service-pension benefits and of his DROP
account balance. 

 Article 6243e.2(1) does not expressly mention COLAs, but Brenda's expert
explained that COLAs were "non-statutory" benefits that the Fund had discretion to
adopt under authority generally allowing increases to the Fund's benefits under
certain circumstances. See Tex. Rev. Civ. Stat. Ann. art. 6243e.2(1), § 10 (Vernon
Supp. 2006) (entitled "Nonstatutory benefit increases"). The Fund's summary plan
description contained the following provisions concerning COLAs:

 Upon reaching eligibility, benefits (including survivor benefits) from the
plan will be adjusted each year by a 3% Cost of Living Adjustment, or
COLA. This adjustment will be added to your monthly benefit:


 Starting with the October after you . . . retired if you were 48
years of age at the date of retirement.


 On your 48th birthday . . . .


 If you are eligible for [COLAs] that are made during your participation
in the DROP, your monthly pension benefit (being made to your DROP
account) will be adjusted by the value of the COLA.


The 1996 QDRO expressly precluded the application of COLAs to Brenda's portion
of Thomas's service-pension benefits (and of Thomas's DROP benefits, as well,
because the 1996 QDRO excluded DROP funds altogether): "The amount payable to
[Brenda] under Paragraph 5 shall not be increased by any cost of living adjustments
made to [Thomas's service-pension or DROP] benefit[s] after the date [of divorce]."

 Brenda again raises a collateral attack, arguing that the QDRO's COLA
provision is void because the divorce decree awarded her a portion of this type of
benefit. For the reasons set out earlier, we conclude that, if the QDRO's COLA
provision and the divorce decree's property division conflict, the QDRO's provision
is void, and Brenda may maintain her collateral attack. We thus determine whether
the QDRO is void in this respect.

 As noted above regarding the DROP, nothing in the plain language of the
divorce decree excluded benefits like COLAs from the division of Thomas's
retirement-related benefits in the Fund. And as we recognized above, the decree
provided that Brenda receive half of the "Houston Firemen's Relief and Retirement
Fund standing in the name of THOMAS E. GAINOUS," not simply half of Thomas's
service-pension benefits. Finally, for the reasons set out above, we also reject
Thomas's arguments that the decree's phrase "standing in the name of THOMAS E.
GAINOUS" can be equated with "on the day of divorce" or that the lack of language
like "if, as, and when received" limited the portion or value of Brenda's award to the
date of divorce. We thus hold that the divorce decree's language is broad enough to
include COLAs to her portion of Thomas's service-pension benefits and DROP
account under the Fund, regardless of whether the COLAs can be considered
community or separate property. (17) 

 We thus hold that the divorce decree unambiguously included COLAs to
Thomas's service-pension benefits and DROP funds under the Fund in its award to
Brenda of "[o]ne-half (1/2) of the Houston Firemen's Relief and Retirement Fund
standing in the name of THOMAS E. GAINOUS." Because the QDRO excluded 
COLAs from being applied to any award of Thomas's service-pension and DROP
benefits that Brenda would receive at any time, the QDRO impermissibly altered the
decree's property division and was void to the extent that it did so. See Tex. Fam.
Code Ann. § 9.007(b). Because the QDRO's provision excluding these COLAs from
Brenda's award was void, Brenda could properly challenge it by collateral attack, and
res judicata and estoppel did not bar her challenge. 

 For these reasons, we hold that the trial court abused its discretion by
misconstruing the divorce decree as not having divided Thomas's COLAs on a
portion of Thomas's service-pension and DROP benefits and, therefore, that the court
also abused its discretion by denying Brenda's motion to enforce or to clarify to the
extent that she sought COLAs on a portion of those benefits. We thus sustain issues
one through three to the extent that they challenge the trial court's refusal to enter an
order enforcing or clarifying the divorce decree's award to her of COLAs on a portion
of those benefits.
The Remaining Benefits


 Finally under issues one, two, and three, Brenda challenges the trial court's
denial of her motion to enforce or to clarify to the extent that that ruling denied her
any portion of (1) the one-time $5,000 lump-sum payment; (2) the $150 monthly
supplemental payment; and (3) the annual supplemental payment benefit, also called
the "13th-benefit payment."

A. The Divorce Decree's Language

 As with the other benefits discussed herein, the divorce decree's award of
"[o]ne-half (1/2) of the Houston Firemen's Relief and Retirement Fund standing in
the name of THOMAS E. GAINOUS" does not expressly exclude these benefits from
the property division; awards Brenda a half interest in "the . . . Fund," rather than in
simply Thomas's service-pension benefits; and cannot be read to restrict Brenda's
interest to that existing on the date of divorce. Accordingly, whether these benefits
were community or separate property, the divorce decree gave half of them to
Brenda. (18)

B. Disposition

 We hold that the trial court abused its discretion by misconstruing the divorce
decree as not having divided Thomas's one-time $5,000 lump-sum payment, the $150
monthly supplemental payment, and the 13th-benefit payment and, thus that the court
also abused its discretion by denying Brenda's motion to enforce or to clarify to the
extent that she sought a portion of these three benefits. We thus sustain issues one
through three to the extent that they challenge the trial court's refusal to enter an
order enforcing or clarifying the divorce decree's award to her of these three
remaining benefits.


Government Code Section 804.003(g)(7)


 Under issue four, Brenda argues that the trial court's judgment, to the extent
that it concerns the DROP funds and COLAs, cannot be supported by an implied legal
conclusion that Government Code section 804.003(g)(7) precluded the award of any
of these funds to her. See Tex. Gov't Code Ann. § 804.003(g)(7) (Vernon 2004). 

 Section 804.003(g)(7) provides that a public retirement system "may reject a
domestic relations order as a [QDRO] unless the order . . . does not purport to award
any future benefit increases that are provided or required by the legislature . . . ." 
Tex. Gov't Code Ann. § 804.003(g)(7) (Vernon 2004). The Fund's policies and
procedures provided that DROP contributions would not be affected by a QDRO. 
The 1996 QDRO provided, "This Order shall not be interpreted to award [Brenda]
any future benefit increases that are provided or required by the Legislature." 

 Thomas argued below that section 804.003(g)(7) allowed the Fund to prevent
Brenda from obtaining any QDRO at any time awarding her a portion of the DROP
funds or a portion of COLAs on his service-pension benefits and DROP funds. In
support, Thomas reasoned that, because the DROP account did not exist until after
the divorce, that account was allegedly his separate property; thus, Thomas
concluded, the account was also a "future benefit increase[] . . . provided or required
by the legislature," and the Fund (and thus the trial court) could properly reject any
QDRO purporting to make such an award--such as the one that Brenda sought by her
2003 motion to enforce or to clarify. He argued below that section 804.003(g)(7)
precluded post-divorce COLAs for the same reasons. (19)

 By its plain terms, section 804.003(g)(7) has nothing to do with whether a trial
court may apportion future contingent retirement benefits like these in a divorce
decree or whether these types of contingent benefits are community or separate
property. A more reasonable interpretation of section 804.003(g)(7) than Thomas's
is that section 804.003(g)(7) allows a public retirement system to reject a QDRO that
awards this type of benefit increase when, at the time that the QDRO is obtained, that
benefit increase has not yet matured or accrued. Once Thomas retired in
approximately August 2003, the Fund could no longer reject, under section
804.003(g)(7), a QDRO concerning Thomas's DROP funds and any COLA increases
to Brenda's portion of Thomas's service-pension benefits and DROP account balance.

 To read section 804.003(g)(7) as Thomas does potentially allows a public
retirement system to refuse to qualify a domestic relations order that validly
apportions matured retirement benefits that an unappealed divorce decree awarded
to the non-employee spouse--properly or improperly. We do not deem the
Legislature to have intended such an absurd result. See Tex. Gov't Code Ann.
§§ 311.021(3) (Vernon 2005) ("In enacting a statute, it is presumed that: . . . (3) a just
and reasonable result is intended . . . ."); 311.023(4), (5) (Vernon 2005) ("In
construing a statute, . . . a court may consider among other matters the: . . . (4)
common law . . ., including laws on the same or similar subjects; [and] (5)
consequences of a particular construction. . . .").

 We sustain issue four.


Conclusion


 We reverse the judgment and remand the cause for the trial court for further
proceedings consistent with this opinion.



 Tim Taft

 Justice


Panel consists of Justices Taft, Keyes, and Hanks.

Justice Keyes, concurring.

Justice Hanks, concurring in the judgment.
1. The Houston Firemen's Relief and Retirement Fund is now known as the
Houston Firefighter's Relief and Retirement Fund. Williams v. Houston
Firemen's Relief & Ret. Fund, 121 S.W.3d 415, 415 n.1 (Tex. App.--Houston
[1st Dist.] 2003, no pet.).
2. The "service-pension benefit" was the basic monthly pension benefit, in which
a firefighter vested after 20 years of active service, that was calculated pursuant
to, among other things, a formula based on years of service and average salary. 
See Tex. Rev. Civ. Stat. Ann. art. 6243e.2(1), § 4(a)-(b) (Vernon Supp.
2006).
3. Brenda's expert calculated that Brenda's interest in the DROP funds was
$34,682.86 as of the same date.
4. The Fund plan, as required by applicable statute, provided that firefighters who
participated in the DROP would still make bi-weekly pension contributions. 
See Tex. Rev. Civ. Stat. Ann. art. 6243e.2(1), § 5(b) (Vernon Supp. 2006);
see also id. § 13(c) (Vernon Supp. 2006). Recognizing that these bi-weekly
pension contributions were Thomas's separate property, Brenda advised the
trial court that she was not seeking a portion of them.
5. See Tex. Rev. Civ. Stat. Ann. art. 6243e.2(1), § 10B (Vernon Supp. 2006).
6. See Tex. Rev. Civ. Stat. Ann. art. 6243e.2(1), § 4(d) (Vernon Supp. 2006).
7. See Tex. Rev. Civ. Stat. Ann. art. 6243e.2(1), § 10A (Vernon Supp. 2006).
8. See Tex. Gov't Code Ann. § 804.003(g)(7) (Vernon 2004).
9. See id.
10. Brenda's expert explained that DROPs existed to allow certain federal tax
benefits while an employee who is eligible for retirement continued to work.
11. However, the Policies and Procedures also provided that "[p]ursuant to a
QDRO, if an Alternate Payee is specifically awarded a dollar amount or a
percentage of the member's DROP account, such amount or percentage will be
distributed . . . in accordance with the member's election."
12. Brenda also argues that the QDRO's DROP provisions are void because "there
is no evidence" that whoever petitioned for the QDRO obtained service by
citation on the other party. See Tex. Fam. Code Ann. § 9.102(c) (Vernon
1998). However, we must presume that the QDRO was valid (that is, that
service of citation occurred), and the burden was on Brenda to show otherwise. 
See Stewart v. USA Custom Paint & Body Shop, Inc., 870 S.W.2d 18, 20 (Tex.
1994) (presumption); Armentor v. Kern, 178 S.W.3d 147, 149 (Tex.
App.--Houston [1st Dist.] 2005, no pet.) (burden). Any gap in the record as
to service of citation for the QDRO thus defeats this particular challenge. See
id. Accordingly, we overrule this challenge under Brenda's issue three.
13. See Shanks v. Treadway, 110 S.W.3d 444, 449 (Tex. 2003) ("no authority"); 
In re Marriage of Jones, 154 S.W.3d 225, 228 (Tex. App.--Texarkana 2005,
no pet.) ("beyond the power," citing statute); In re Marriage of McDonald, 118
S.W.3d 829, 833 (Tex. App.--Texarkana 2003, pet. denied) ("outside the
scope of the trial court's authority"); Marshall v. Priess, 99 S.W.3d 150, 157,
158, 160 (Tex. App.--Houston [14th Dist.] 2002, no pet.) ("beyond the
power," citing statute; "no authority"; and "exceeded its authority"); see also
Hurley v. Hurley, 960 S.W.2d 287, 288 (Tex. App.--Houston [1st Dist.] 1997,
no pet.) ("power"); In re Marriage of Clark, No. 07-02-0285-CV, 2004 WL
350988, at *3 (Tex. App.--Amarillo Feb. 25, 2004, no pet.) (memo. op.)
("lacked jurisdiction").
14. Thomas views the DROP funds as his separate property because (1) the DROP
account did not begin until after the divorce and (2) retirement benefits that are
attributable to post-divorce employment are separate property. That is,
Thomas views the DROP funds as wholly new benefits that sprang into
existence when he became eligible to retire. In contrast, Brenda views the
DROP funds as community property because (1) eligibility to participate in the
DROP is based upon years of service, most of which occurred during the
marriage, and (2) the monies paid into Thomas's DROP account (with the
exception of Thomas's contributions during DROP participation) were merely
deferred retirement benefits being held for him, and allowed to accrue interest,
until he retired. That is, Brenda views the DROP funds not as wholly new
benefits that sprang into existence when Thomas became eligible to retire, but,
instead, as deferred service-pension benefits (plus interest and COLAs) that
Thomas merely allowed the Fund to keep until he left this employment.


 The Fourteenth Court of Appeals, in a well-reasoned opinion adopting the
position that Brenda takes here, has concluded that DROP funds paid as a
benefit under a defined-benefit plan are community property, subject to just
and right division to the extent that they were earned during marriage, with the
exception of the employee spouse's post-divorce contributions. See Stavinoha
v. Stavinoha, 126 S.W.3d 604, 612 (Tex. App.--Houston [14th Dist.] 2004, no
pet.). We need not determine whether Stavinoha is persuasive in our case or
whether Thomas's DROP funds were partially community property because,
even if they were not, the unappealed divorce decree awarded half of them to
Brenda.
15. We recognize that, in addition to using the decretal language cited above, the
trial court recited elsewhere in the Gainouses' divorce decree that it was
dividing the "estate of the parties," i.e., the community-property estate. 
However, as indicated in the parenthetical above, the Reiss court construed a
very similar decree to divide half of all retirement-plan benefits when the
decree's decretal language purported to divide all of that asset, despite the
decree's also having recited that the court was dividing "community property"
and that the disputed retirement-plan benefits were part of that community
property. See Reiss v. Reiss, 118 S.W.3d 439, 440 (Tex. 2003). If the decree
in Reiss could not be construed to have divided only community property, then
neither can this decree.


 Justice Hanks, in his concurring opinion, indicates that he joins only the
judgment of the Court because he disagrees with Reiss. However, whether we
disagree with Reiss is irrelevant: it is binding precedent that cannot be
distinguished from this case.
16. But see Cearley v. Cearley, 544 S.W.2d 661, 662 (Tex. 1976) (holding that
retirement benefits earned by spouse during marriage are contingent
community property, even though not then subject to possession and
enjoyment).
17. As it did with DROP funds, the Stavinoha court held that COLAs were
contingent community property subject to division for the reason that they
were granted upon eligibility to retire, which was governed by years of service
(some of which occurred during the community's existence), and were not
increases due to continued employment. Stavinoha, 126 S.W.3d at 613-14. 
The Stavinoha court's holding comports with our own court's view of post-divorce COLAs to retirement benefits. See Reiss v. Reiss, 40 S.W.3d 605, 611
n.5 (Tex. App.--Houston [1st Dist.] 2001), rev'd on other grounds, 118
S.W.3d 439 (Tex. 2003); Phillips v. Parrish, 814 S.W.2d 501, 504-05 (Tex.
App.--Houston [1st Dist.] 1991, writ denied). Again, it is irrelevant whether
the COLAs were community or separate property because, even if they were
separate property, the unchallenged divorce decree divided them.
18. Article 6243e.2(1) provided that each of these three benefits would be paid to
a firefighter who retired. See Tex. Rev. Civ. Stat. Ann. art. 6243e.2(1), §§
4(d), 10A, 10B (Vernon Supp. 2006). A firefighter was not eligible for
retirement until he had at least 20 years of participation in the Fund. Id. § 4(a). 
For this reason, the Stavinoha court held that such benefits are community
property--to the extent that the employee's years towards retirement were
earned during the marriage--subject to division. See Stavinoha, 126 S.W.3d
at 613. However, the Gainouses were divorced before the Legislature created
these benefits; in Stavinoha, in contrast, the Stavinohas divorced in October
1995, after the Legislature had created these benefits. See Act of May 21,
1997, 75th Leg., R.S., ch. 1268, § 1, 1997 Tex. Gen. Laws 4794, 4799
(amended 1999, 2001) (current version at Tex. Rev. Civ. Stat. Ann. art.
6243e.2(1), § 4(d) (Vernon Supp. 2006)); Act of May 10, 1999, 76th Leg.,
R.S., ch. 211, § 9, 1999 Tex. Gen. Laws 687, 692-93 (amended 2001) (current
version at Tex. Rev. Civ. Stat. Ann. art. 6243e.2(1), §§ 10A, 10B (Vernon
Supp. 2006)); Stavinoha, 126 S.W.3d at 613. We need not determine whether
these three benefits were community or separate property, however, because
even if they were separate property, the uncontested divorce decree divided
them.
19. Thomas's response to Brenda's motion to enforce or to clarify asserted section
804.003(g)(7) against only her request for a portion of his DROP funds and
COLAs. He did not argue that that section precluded the entry of a QDRO
awarding the three other contested benefits. The issue of whether section
804.003(g)(7) and the Fund's policies precluded a QDRO awarding Brenda a
portion of the three remaining benefits does not appear to have been litigated
below, and the issue thus does not appear to have been a basis for the court's
judgment, which did not recite the bases on which it was rendered. To the
extent that the trial court could be construed as nonetheless having implicitly
ruled on section 804.003(g)(7)'s effect on Brenda's request for a QDRO
concerning the three remaining benefits, however, Brenda's challenge
concerning that implicit ruling under section 804.003(g)(7) would be
controlled by our discussion here.