**In the Matter of the MARRIAGE OF Gloria C. McDONALD and James W. McDonald and in the interest of Jamie Sue McDonald and Kelly Marie McDonald, Minor Children.**

No. 06–02–00155–CV.

Court of Appeals of Texas, Texarkana.

Submitted Aug. 27, 2003.

Decided Sept. 4, 2003.

Rehearing Overruled Nov. 4, 2003.

Shawn Casey, Shawn Casey & Assoc., Raymond H. Stauffacher Jr., Houston, for appellant.

Pamela E. George, Reginald A. Hirsch, Lipstet & Hirsch, LLP, Houston, for appellee.

Before MORRISS, C.J., ROSS and CARTER, JJ.

## OPINION

Opinion by Justice CARTER.

### I. *Factual and Procedural Background*

This case involves an appeal from a post-divorce Clarifying Order found within the body of a Qualified Domestic Relations Order (QDRO). In four points of error, James W. McDonald asks us to set aside the Clarifying Order, contending the trial court erred by entering an order that (1) divests him of his future separate property, (2) grants Gloria McDonald rights to

pension benefits that will be earned as a result of James' post-divorce employment options, (3) circumvents the federal preemption of alienation of benefits granted under the Employee Retirement Income Security Act of 1974 (ERISA), and (4) substantively changes the award of property found in the parties' original decree of divorce.

James, a long-time employee of the public school system, accumulated pension benefits with the Teacher Retirement System of Texas (TRS) during his marriage to Gloria. Subject to the terms and conditions of a QDRO signed simultaneously with a final divorce decree, Gloria was awarded one half of the benefits of the TRS plan after the deduction of $5,000.00. No other directives were given in the final divorce decree in relation to the distribution of the TRS plan.

As a benefit to James, the TRS plan provides that, if his employment is terminated for any reason, he has the right to request a payout of his pension in a one-time lump sum payment. In addition, if James requests a lump sum payment from TRS but later regains employment with the school system, the plan allows him to replenish his previously withdrawn benefit in order to restore his annuity to the prewithdrawal level. While James' annuity can be restored under the plan, Gloria's cannot; nevertheless, as an alternate payee, Gloria is bound by James' election. Should James exercise his option to receive a lump sum payment, Gloria's benefits would be substantially reduced.

In order to prevent this potential loss of benefits, Gloria filed an opposed motion to enter and division of assets in which she asserted the need for a new QDRO. The trial court thereafter held a hearing and, over James' objection, signed a QDRO, modified by the inclusion of a Clarifying Order.

## II. *Discussion*

Before addressing the merits of James' appeal, we must determine whether error was properly preserved and whether ERISA's antialienation provisions apply in this case. Concerning preservation, Gloria contends James waived or failed to preserve error when he did not object or specifically challenge the trial court's findings of fact and conclusions of law. By complaining of the trial court's Clarifying Order being entered as part of the new QDRO, however, James properly preserved error when he timely filed his motion for new trial, which was subsequently denied by written order. *See McClary v. Thompson,* 65 S.W.3d 829, 833 (Tex.App.-Fort Worth 2002, pet. denied). As for ERISA, James incorrectly asserts in his third point of error that the TRS plan is subject to the antialienation provisions of Title I. Despite ERISA's comprehensiveness, Congress specifically excluded governmental employee benefit plans from coverage. 29 U.S.C.A. § 1003(b)(1) (West 1999). The TRS plan "established or maintained for its employees ... by the government of [the State of Texas] or political subdivision thereof, or by any agency or instrumentality of ... the foregoing," falls neatly into the definition of a governmental plan and is not, therefore, subject to Title I of ERISA. 29 U.S.C.A. § 1002(32) (West 1999).

Having determined that error was properly preserved and that ERISA's antialienation provisions do not apply in this case, we reach the merits of James' appeal. In his first, second, and fourth points of error, James contends the Clarifying Order does not facilitate a just and right division of property under the original divorce decree; instead, it improperly divests him of his separate property by substantively changing the distribution of

property in the final divorce decree. Specifically, James contends that, once he withdraws his accumulated benefits from the TRS plan and Gloria receives her court-ordered share, any subsequent action on his part relating to TRS benefits involves only his separate property and is outside the trial court's authority to divide. Gloria, however, contends the Clarifying Order simply protects her community interest in the pension and, at most, imposes a fiduciary duty on James.

In a divorce, a trial court shall divide the parties' marital estate in a manner that the court determines is just and right, having regard for the rights of each party and any children of the marriage. TEX. FAM.CODE ANN. § 7.001 (Vernon 1998). Once the marital estate is divided,

> A court may not amend, modify, alter, or change the division of property made or approved in the decree of divorce or annulment. An order to enforce the division is limited to an order to assist in the implementation of or to clarify the prior order and may not alter or change the substantive division of property.

TEX. FAM.CODE ANN. § 9.007(a) (Vernon 1998). An order that amends, modifies, alters, or changes the division of property made or approved in a final decree of divorce is beyond the trial court's power and is unenforceable. TEX. FAM.CODE ANN. § 9.007(b) (Vernon 1998). If the trial court finds the original form of the division of property is not specific enough to be enforceable by contempt, it may render a clarifying order setting forth specific terms to enforce compliance with the original division of property awarded by the divorce decree. See TEX. FAM.CODE ANN. § 9.008 (Vernon 1998).

Clarifying orders may more precisely specify the manner of carrying out the property division previously ordered so long as the substantive division of the property is not altered. See McPherren v. McPherren, 967 S.W.2d 485, 490 (Tex. App.-El Paso 1998, no pet.); Dechon v. Dechon, 909 S.W.2d 950, 956 (Tex.App.-El Paso 1995, no writ). Clarification also requires a finding, express or implied, that the original form of the division of property lacks sufficient specificity to be enforced by contempt. TEX. FAM.CODE ANN. § 9.008(b); In re Alford, 40 S.W.3d 187, 189 (Tex.App.-Texarkana 2001, no pet.). If a divorce decree is unambiguous, the court has no authority to alter or modify the original disposition of property. Haworth v. Haworth, 795 S.W.2d 296, 300 (Tex.App.-Houston [14th Dist.] 1990, no writ).

We review a trial court's clarifying order for an abuse of discretion. A trial court abuses its discretion when it acts in an unreasonable and arbitrary manner or without reference to any guiding rules or principles, Schneider v. Schneider, 5 S.W.3d 925, 929 (Tex.App.-Austin 1999, no pet.), or erroneously exercises its power by making a choice that was not within the range of choices permitted the court by law, Reyna v. Reyna, 738 S.W.2d 772, 775 (Tex.App.-Austin 1987, no writ).

In this case, the final divorce decree and the accompanying QDRO awarded Gloria fifty percent of the total benefits accrued under the TRS plan as of June 22, 2000. The Clarifying Order, however, modifies the final divorce decree's distribution of property in such a way that goes beyond facilitating the distribution of her fifty-percent share of the TRS plan benefits. Under the terms of the Clarifying Order, should James elect to take a lump sum payment of his accrued benefits under the TRS plan and subsequently replenish the fund to preserve his annuity, he would be expressly required to pay Gloria's share to

her, in monthly installments, as if those payments were made in the form of a single life annuity.[1] This is a substantive change to the final divorce decree and is outside the scope of the trial court's authority.

The Clarifying Order not only grants Gloria fifty percent of any lump sum payment—an amount authorized by the final divorce decree—but also grants installment payments from funds acquired after the divorce. If James, after electing to receive a lump sum payment of his plan benefits, chooses to resume employment in the educational system and replenish the funds and pay a reinstatement fee to restore his annuity under the TRS plan, the terms of the Clarifying Order entitle Gloria to reimburse James an amount equal to his proportionate share of the redeposited contributions and the reinstatement fee. Upon Gloria's reimbursement of these amounts, James is ordered to remit to her monthly payments.

The divorce is final. To reinstate James' annuity, he must (1) discontinue his employment and withdraw his retirement benefits, whereupon Gloria would receive her fifty-percent share, and (2) resume employment in the Texas educational system and redeposit the funds, plus fees. Under this scenario, these divorced parties would have received their fifty-percent interest in the retirement account; therefore, any funds used to reestablish this annuity would not be from community property, but from funds or earnings no longer subject to division. To permit the trial court's "clarification" of the final divorce decree in this manner is an unauthorized substantive change.

### III. *Conclusion*

Since the trial court abused its discretion by substantively changing the final divorce decree's distribution of property, we reverse and render judgment, setting aside the trial court's Clarifying Order.

---

1. The Clarifying Order, in pertinent part, states:

13. The following paragraphs of this Order are not intended to be portions of the Qualified Domestic Relations Order above, but are intended to be additional orders of the Court related to the Plan nonetheless.....
14.....
a. In the event James W. McDonald requests and receives a withdrawal of accumulated contributions plus (plus accumulated earnings) as of June 22, 2000, plus earnings in accordance with the terms of Plan from June 22, 2000, in effect denying Gloria C. McDonald any annuity benefits under the Plan, and subsequently re-deposits the amount withdrawn plus a reinstatement fee in order to reinstate James W. McDonald's right to receive an annuity, James W. McDonald shall pay to Gloria C. McDonald a monthly amount equal to the amount provided in Paragraph 5 et seq. above, under the same terms and conditions as if those payments were made in the form of a single life annuity by the Plan pursuant to this Order.