Opinion issued June 7, 2007













In The

Court of Appeals

For The

First District of Texas






NO. 01-04-00893-CV






MARK A. METZGER JR., Appellant


V.


PATRICIA WESTBO METZGER, Appellee (1)






On Appeal from the 247th District Court

Harris County, Texas

Trial Court Cause No. 2002-21703





MEMORANDUM OPINION


 Appellant, Mark A. Metzger Jr., appeals from an "Order on Motion for
Clarification of Prior Decree of Divorce" rendered between him and appellee, Patricia
Westbo Metzger ("Westbo"). We determine (1) whether Metzger sufficiently briefed two
of his appellate challenges; (2) whether he preserved his challenge that the trial court
erred in rendering the order because he had withdrawn his consent to the mediated
agreement on which the order was based; and (3) whether the trial court had subject-matter jurisdiction to enter certain provisions of the order concerning stock divided
in the divorce decree. We modify the order and affirm it as so modified.

Background


 Metzger and Westbo divorced on July 1, 2002. The decree awarded each party,
as his or her separate property, "[a]ll shares of stock personally owned." The divorce
decree did not, however, name the shares of stock that each party personally owned. 
Neither party appealed the divorce decree, and it became final. 

 In October 2002, outside the trial court's plenary jurisdiction, Westbo moved
for clarification of the divorce decree. In pertinent part, the clarification motion
provided:

 The Motion for Enforcement [sic] and Clarification of Prior Order
[sic] is brought to modify, correct or reform the judgment previously
entered in this case. . . . [Westbo] did not have legal counsel in this case
and, instead, relied on the legal advice of [Metzger's] former counsel of
record, Joe Alfred Izen, Jr. The filing of this Motion for Clarification of
Prior Order is necessary to clarify exactly what was meant in Paragraph
5, page 4 of the Decree of Divorce [the provision that Westbo be
awarded "[a]ll shares of stock personally owned"].


 At the time of the granting of the divorce, [Westbo] and
[Metzger] owned one-half of two Texas corporations. This divorce
decree was unnecessarily ambiguous and thus a fraud on [Westbo's]
property rights. . . . [T]he divorce decree . . . awarded each party "all
shares of stock personally owned." It was known to [Metzger's] counsel
for several years that such provision allowed each party to own 50% of
the shares in two corporations formed during the coverture of marriage,
i.e., Lacy Creekside, Inc., and Respiratory, Inc.


 The problem in the ambiguous language was compounded by
what happened on July 30, 2002, when [Westbo] went to the corporate
offices of one of the two corporations owned equally by the parties and
[Metzger] had removed everything from the premises without notice to
[Westbo]. [Metzger's] attorney drafted and filed the Decree of Divorce. 
He should have known that allowing the parties to remain as equal
owners, after divorce, in two corporations owned equally by each and
formed during marriage, would lead to what happened on July 30, 2002
and create a problem and a denial of [Westbo's] property rights.


 It would be an injustice to [Westbo] to allow the Decree of
Divorce to stand as entered without clarification as to what legal rights
accompany her award of stock in the two corporations owned both
before divorce and after divorce with her ex-husband. [Westbo]
requests the Court to grant the Motion for Clarification of Prior Order
and resolve the matter of allowing the divorced spouses to continue as
equal co-owners and define their respective rights in regard to the two
corporations.


(Emphasis added.) In a response to a jurisdictional plea that Metzger filed, Westbo
later represented that her motion to clarify sought only to "resolve the matter of
naming for the divorced spouses which corporations they are equal co-owners [of]
and define their respective rights in regard to the two corporations" and to state the
"responsibilities, if possible, of the parties in the two corporations." Likewise, in a
response to a summary-judgment motion filed by Metzger, Westbo represented that
"[t]he answer to this question [of the corporations' names] is all [Westbo] seeks" by
her clarification motion.

 The parties eventually mediated and signed a settlement agreement ("the
mediated settlement agreement"). The mediation, and thus the mediated settlement
agreement, resolved matters not only relevant to Westbo's clarification motion, but
also concerning a suit in Tyler for trespass to try title and property that appears not
to have been divided by the divorce decree. See Tex. Fam. Code Ann. § 9.203(a)
(Vernon 2006) (allowing court that failed to dispose of property subject to division
in final divorce or annulment decree to divide such property in matter that court
deems just and right); see also id. § 9.004 (Vernon 2006) (providing that limitations
of post-decree enforcement or clarification proceedings do not apply to property
divided under Family Code subchapter that includes section 9.203(a)). In the portion
pertinent to Metzger's appellate challenges, the mediated settlement agreement
provided:

 11. Westbo will sign over and Metzger is awarded 1,000 shares of
stock in Lacy Creekside, Inc.


 12. Westbo will disclaim and/or convey all right, title and interest in
and to 1,000 shares of Respiratory, Inc. stock and use her Power
of Attorney over Lucrettia Broyles to void the Revocation of the
Broyles Trust and reinstate same and make said Trust irrevocable
with Metzger and his children as the sole beneficiaries thereof
and disclaim and/or convey any beneficial interests of Westbo
and/or her children in or to such Trust. Westbo and her attorneys
shall be provided drafts and final documents of such conveyances
prior to the date of execution of same.


 Westbo moved for entry of an order on the mediated settlement agreement;
Metzger objected to her proposed order, although nothing in the record shows that he
withdrew his consent to the mediated settlement agreement. The trial court signed
the clarification order on June 18, 2004, reciting that the order was based on the
mediated settlement agreement. The clarification order provided in pertinent part:

 Additional Clarifying Orders


 [T]he Court finds that the 1,000 shares of stock in Respiratory,
Inc. are the property of The Wayne Elliott Broyles, Sr. and Lucretia
Helen Broyles Trust Dated the 28th Day of April, 1995, Joe Alfred Izen,
Jr. Trustee. The Court finds that Mark Alan Metzger, Jr., is the sole
beneficiary of the equitable title in and to all assets of The Wayne Elliott
Broyles, Sr. and Lucretia Helen Broyles Trust Dated the 28th Day of
April, 1995 and that upon the death of Lucretia Helen Broyles, pursuant
to the terms of said trust, (Wayne Elliott Broyles, Sr. having already
predeceased her) Mark Alan Metzger, Jr. shall hold legal title to all
assets of said trust. The Court finds that neither Patricia Westbo
Metzger nor her children own any legal or equitable interest in or to any
of the assets of The Wayne Elliott Broyles, Sr. and Lucretia Helen
Broyles Trust Dated the 28th Day of April, 1995, including the 1,000
shares of stock in Respiratory, Inc.


 Modified Division of Marital Estate


 The Court finds that the prior Decree of Divorce did not
accurately describe . . . all the property of the parties and, therefore, the
Court, with the consent of the parties[,] hereby sets forth the proper
identification, listing of the property awarded or intended to be awarded
to each party as a just and right division of the parties' marital estate,
having due regard for the rights of each party and the child of the
marriage.


 Property to Respondent, Mark A. Metzger, Jr.


 IT IS ORDERED AND DECREED that the Respondent, MARK
A. METZGER, JR., is awarded the following as his sole and separate
property, and PATRICIA WESTBO METZGER is divested of all right,
title, interest, and claim in and to that property:


 A-1. 1,000 shares of Lacy Creekside, Inc. stock . . . .


 . . .


 A-4. All beneficial interest in The Wayne Elliott Broyles, Sr. and
Lucretia Helen Broyles Trust Dated the 28th Day of April, 1995 and
100% of the legal interest in an [sic] to the assets of said trust upon the
death of Lucretia Helen Broyles, pursuant to the terms of said trust,
Wayne Elliott Broyles, Sr. having already predeceased Lucretia Helen
Broyles. PATRICIA WESTBO METZGER and her children are hereby
divested of all legal right and equitable interest in and to said trust.


 . . . .


(Emphasis added.) The remainder of the clarification order, among doing other
things, awarded property and assigned debts that had not been mentioned expressly
in the divorce decree and also ordered cash sums to Westbo from Metzger pursuant
to the mediated settlement agreement.

Matters Not Properly Briefed


 In issues three and four, Metzger argues that the trial court erred by (1)
rendering a clarification order "based on the mediated settlement agreement without
affording [him] a trial by jury" and (2) by entering an order that altered the mediation
agreement's terms. Although Metzger's brief indicates that issues three and four are
discussed with issue two because the authority for all three of these issues is the same,
it is not, and nowhere under issue two does he set out the authority supporting issues
three and four. Accordingly, Metzger's issues three and four are not before us. See
Tex. R. App. P. 38.1(h) ("The brief must contain a clear and concise argument for the
contentions made, with appropriate citations to authorities and to the record."); Miller
v. State & County Mut. Fire Ins. Co., 1 S.W.3d 709, 712 (Tex. App.--Fort Worth
1999, pet. denied) (declining to address two issues that were not discussed in brief's
argument section, despite fact that those two issues had been identified at start of
brief as being two of four "issues presented").

 We overrule issues three and four.

Alleged Revocation of Consent to Mediated Settlement


 In issue two, Metzger asserts that the trial court erred in signing the
clarification order, which the order recited was based on the mediated settlement
agreement, because Metzger had withdrawn his consent to the mediated settlement
agreement before the clarification order's rendition. Nowhere below did Metzger
inform the trial court that he had withdrawn his consent to the agreement underlying
the order. (2) The issue is not preserved. (3) See Tex. R. App. P. 33.1(a)(1)(A).

 We overrule issue two.

Jurisdiction


 In issue one, Metzger argues that the trial court lacked subject-matter
jurisdiction to enter "the stock division" portion of the clarification order because 
that portion of the order impermissibly modified the divorce decree's property
division, rather than merely clarifying it. For the same reason, according to Metzger,
the mediated settlement agreement was also "a nullity." 

 Fairly interpreting issue one--including, among other things, his argument that
"[t]he trial court was without authority to change the terms of the divorce decree by
entering the stock division order" (emphasis added) and that the other property
divided in the clarification order appears not to have been divided in the divorce
decree--we conclude that Metzger is complaining only of the portions of the
clarification order that concerned the Lacy Creekside, Inc. and Respiratory, Inc.
stock, which were the two stocks that the clarification motion itself concerned. The
portions of the clarification order quoted above are the provisions that are relevant
to these two companies' stock.

A. The Standard of Review

 "We review [a] trial court's ruling on a post-divorce motion for . . . clarification
of a divorce decree under an abuse-of-discretion standard." Gainous v. Gainous, 219
S.W.3d 97, 103 (Tex. App.--Houston [1st Dist.] 2006, pet. filed). "When a trial court
makes no separate findings of fact or conclusions of law, we must draw every
reasonable inference supported by the record in favor of the trial court's judgment." (4) 
Id. "Additionally, 'the judgment of the trial court must be affirmed if it can be upheld
on any legal theory that finds support in the evidence.'" Id. (quoting Lassiter v. Bliss,
559 S.W.2d 353, 358 (Tex. 1977), overruled on other grounds, Cherne Indus., Inc.
v. Magallanes, 763 S.W.2d 768 (Tex. 1989)). "Nonetheless, in cases in which the
appellate record includes the reporter's record, the trial court's implied fact findings
are not conclusive and may be challenged for legal and factual sufficiency of the
evidence supporting them." Id. "We review implied legal conclusions de novo." Id.

B. The Trial Court's Limited, Continuing Jurisdiction

 "A court that rendered a divorce decree generally retains continuing
subject-matter jurisdiction to clarify and to enforce the decree's property division." 
Id. at 106 (citing Tex. Fam. Code Ann. §§ 9.002, 9.008 (Vernon 2006)). 
"Specifically, the court has continuing jurisdiction to 'render further orders . . . to
clarify the prior order.'" Id. (quoting Tex. Fam. Code Ann. § 9.006(a) (Vernon
2006)). "Likewise, '[o]n a finding . . . that the original form of the division of
property is not specific enough to be enforceable by contempt,' the court has
continuing jurisdiction to 'render a clarifying order setting forth specific terms to
enforce compliance with an original division of property.'" Id. (quoting Tex. Fam.
Code Ann. § 9.008(b) (Vernon 2006)). However,

 there are limitations on the enforcement and clarification powers of the
court that rendered the divorce decree. For example, "[t]he court may
specify more precisely the manner of effecting the property division
previously made if the substantive division of property is not altered or
changed."

Id. (quoting Tex. Fam. Code Ann. § 9.006(b) (Vernon 2006)) (emphasis in original). 
Specifically, the Family Code provides:

 (a) A court may not amend, modify, alter, or change the division of
property made or approved in the decree of divorce or annulment.
An order to enforce the division is limited to an order to assist in
the implementation of or to clarify the prior order and may not
alter or change the substantive division of property.


 (b) An order under this section that amends, modifies, alters or
changes the actual, substantive division of property made or
approved in a final decree of divorce or annulment is beyond the
power of the divorce court and is unenforceable.

Tex. Fam. Code Ann. § 9.007(a)-(b) (Vernon 1998); see Shanks v. Treadway, 110
S.W.3d 444, 449 (Tex. 2003).

 "Clarifying orders may more precisely specify the manner of carrying out the
property division previously ordered so long as the substantive division of the
property is not altered." In re Marriage of McDonald, 118 S.W.3d 829, 832 (Tex.
App.--Texarkana 2003, pet. denied). Accordingly, a proper clarification order is
consistent with the prior divorce decree. McKnight v. Trogdon-McKnight, 132
S.W.3d 126, 130 (Tex. App.--Houston [14th Dist.] 2004, no pet.). Also for this
reason, "[c]larification . . . requires a finding, express or implied, that the original
form of the division of property lacks sufficient specificity to be enforced by
contempt." In re Marriage of McDonald, 118 S.W.3d at 832. "If a divorce decree
is unambiguous, the court has no authority to alter or modify the original disposition
of property." Id.; accord McKnight, 132 S.W.3d at 130. "Whether the decree is
ambiguous is a question of law subject to de novo review." McKnight, 132 S.W.3d
at 131.

C. Discussion

 The divorce decree provided in pertinent part only that each party was to
receive, as his or her separate property, "[a]ll shares of stock personally owned." 
Because the clarification order was rendered upon the mediated settlement agreement,
there was no testimony or explanation at the hearing on Westbo's clarification motion
as to whether this language was ambiguous. However, the trial court did have before
it the summary-judgment evidence, specifically Westbo's affidavit and Metzger's
answers to interrogatories, indicating Westbo's position that the parties disputed what
percentage interest they held in the stock of Lacy Creekside, Inc. and Respiratory,
Inc. Westbo's motion for clarification, when first filed, sought more than mere
clarification: it sought "to modify, correct or reform" the decree; it requested that the
court "resolve the matter of allowing the divorced spouses to continue as equal co-owners and define their respective rights in regard to the two corporations"; it alleged
"fraud," ostensibly because she had relied on her husband's attorney in the divorce
proceedings; and it complained that Metzger's counsel "should have known that
allowing the parties to remain as equal owners, after divorce, in two corporations
owned equally by each and formed during marriage, would lead to what happened on
July 30, 2002 and create a problem and a denial of [Westbo's] property rights." She
limited her clarification request, however, through her summary-judgment and
dismissal responses. See Stephens v. Dolcefino, 126 S.W.3d 120, 130-31 (Tex.
App.--Houston [1st Dist.] 2003) (concluding that plaintiff limited cause of action by
judicial admission made in summary-judgment response), pet. denied, 181 S.W.3d
741 (Tex. 2005). In those responses, she restricted her clarification request to resolve
"the matter of naming for the divorced spouses which corporations they are equal co-owners [of] and define their respective rights in regard to the two corporations." 
Nonetheless, it is clear from everything in the record that both parties knew which
two corporations' stocks were intended by the divorce decree's award of "[a]ll shares
of stock personally owned." 

 What Westbo's clarification motion ultimately requested was (1) the naming
of the two corporations to which the divorce decree's "[a]ll shares of stock personally
owned" language referred and (2) the "defin[ing]" of Westbo's and Metzger's
"respective rights in regard to the two corporations." The second request exceeded
mere clarification because it sought a declaration of the parties corporate rights, not
merely the elucidation of any ambiguity inherent in the term "[a]ll shares of stock
personally owned." The trial court, therefore, had no continuing jurisdiction to grant
Westbo's second request. 

 Westbo's first request could conceivably have constituted clarification,
provided that (1) the decree's language was ambiguous as to which corporations'
stock was intended and (2) the clarification order merely identified to which corporate
stock the divorce decree referred. See Young v. Young, 765 S.W.2d 440, 443 (Tex.
App.--Dallas 1988, no writ) (holding that trial court had jurisdiction to enter
clarification order that specified which furniture was intended by divorce decree's
award of "furniture," which was defined in decree only generally as moveable
furniture, paintings, and antiques). As for ambiguity, it is questionable whether the
decree's language "[a]ll shares of stock personally owned" was ambiguous in the way
that Westbo alleged below--that the omission of the names of the corporations whose
stock was awarded made the award unclear. In fact, Westbo herself alleged below
that both parties knew the two corporations in which they had been awarded stock
under this provision of the divorce decree. Additionally, the mediated settlement
agreement indicates that the parties knew which two corporations were involved. 

 In any event, the clarification order did more than merely name the
corporations whose stock was divided. The order decreed that a trust held all stock
of Respiratory, Inc.; decreed that Metzger would become beneficiary of the trust and
its assets upon the death of the current beneficiary; decreed that Westbo and the
children had no beneficial interest in the trust or its assets; awarded 1,000 shares of
Lacy Creekside, Inc. stock to Metzger; awarded Metzger all beneficial interest in the
aforementioned trust upon the death of the current beneficiary; and divested Westbo
and the parties' children of all legal and equitable interest in the trust and its assets. 
Moreover, the mediated settlement agreement, on which the trial court based the
clarification order, required Westbo to transfer 1,000 shares of her stock in Lacy
Creekside, Inc. to Metzger and to convey or to disclaim her and her children's
equitable and legal title to the assets of the trust holding the Respiratory, Inc. stock;
the clarification order then awarded Metzger 1,000 shares of Lacy Creekside, Inc.
stock and divested Westbo and her children of any interest in the trust, including to
the Respiratory, Inc. stock. It thus appears, even viewing the record in the light most
favorable to the court's ruling, that the clarification order was used not to clarify the
divorce decree, but judicially to enforce the parties' mediated settlement agreement
to convey the stock in these two corporations. This is not mere clarification, and the
trial court had no jurisdiction to do it.

 "'Subject-matter jurisdiction cannot be conferred by consent, waiver, or
estoppel at any stage of a proceeding.'" Saudi v. Brieven, 176 S.W.3d 108, 113 (Tex.
App.--Houston [1st Dist.] 2004, pet. denied) (quoting Tourneau Houston, Inc. v.
Harris County Appraisal Dist., 24 S.W.3d 907, 910 (Tex. App.--Houston [1st Dist.]
2000, no pet.)). The parties' settlement mediated agreement could not create subject-matter jurisdiction where none existed. See id. 

 We thus hold that the trial court abused its discretion in entering those portions
of the clarification order discussed immediately above, i.e., those decreeing that a
trust held all stock of Respiratory, Inc., decreeing that Metzger would become
beneficiary of the trust and its assets upon the death of the current beneficiary,
decreeing that Westbo and the parties' children had no beneficial interest in the trust
or its assets, awarding 1,000 shares of Lacy Creekside, Inc. stock to Metzger,
awarding Metzger all beneficial interest in the aforementioned trust upon the death
of the current beneficiary, and divesting Westbo and the parties' children of all legal
and equitable interest in the trust. 

 Our holding is simply that this trial court, in the exercise of its limited post-decree jurisdiction to clarify, had no power to enter these specific portions of the
appealed clarification order. Our holding does not, as Metzger also argues under
issue one, have the effect of rendering the mediated settlement agreement itself void. 
Generally speaking, parties may contract as they wish concerning property awarded
them in a divorce decree, and they may sue for breach of that contract. It is only the
divorce court that has no power to modify the divorce decree's property division after
the divorce decree has become final.

 We sustain issue one in part and overrule it in part, as indicated above.

Conclusion


 We modify the clarification order to delete the provisions discussed above and
affirm the order as so modified.



 Tim Taft

 Justice


Panel consists of Justices Taft, Alcala, and Hanks.
1. The parties refer to appellee as "Patricia F. Metzger Westbo." However, the
trial court's clarification order that is the subject of this appeal recites that
appellee's name is "Patricia Westbo Metzger." In our opinion and judgment,
we use the name for appellee that the trial court's clarification order employed.
2. Instead, Metzger objected to Westbo's proposed clarification order because,
for example, it allegedly did not accurately represent the parties' agreement
and because Metzger believed that the trial court could not sign the order until
after the Tyler district court had entered its decree effectuating a portion of the
mediated settlement agreement. And during the hearing on entry of the
clarification order, Metzger represented that "all I'm asking you, Judge[,]" was
to wait for the Tyler court to sign its judgment first, thus narrowing his
objection.
3. Moreover, nothing in the record shows that Metzger withdrew his consent
.
4. In a few sentences under his issue one, Metzger mentions that he requested fact
findings and legal conclusions, that he notified the trial court when those were
overdue, and that the failure to enter same was "harmful error." In support,
Metzger cites Tenery v. Tenery, in which the supreme court noted that "[a] trial
court's failure to make findings is not harmful error if 'the record before the
appellate court affirmatively shows that the complaining party suffered no
injury.'" 932 S.W.2d 29, 30 (Tex. 1996) (quoting Cherne Indus., Inc. v.
Magallanes, 763 S.W.2d 768, 772 (Tex. 1989)). Metzger does not explain
how the lack of fact findings or legal conclusions was harmful; he never again
mentions the lack of such findings and conclusions; and he does not request the
appropriate remedy for such a failure, which is, generally, to abate the appeal
and to remand the cause for the entry of findings and conclusions (rather, he
consistently requests a rendition). See, e.g., Elliott v. Kraft Foods N. Am., Inc.,
118 S.W.3d 50, 56 (Tex. App.--Houston [14th Dist.] 2003, no pet.) ("The
proper remedy for a trial court's refusal to file findings of fact and conclusions
of law is abatement of an appeal, thereby giving the trial court an opportunity
to cure its error."). Nor does he assert a separate issue complaining of the
omission of findings and conclusions, instead merely adding a few sentences
about the omission within the discussion of his issue concerning the trial
court's subject-matter jurisdiction to alter the divorce decree's property
division. Accordingly, this complaint, if it could be construed as a complaint,
is not properly presented for our review. See Tex. R. App. P. 38.1(h).