# NO. 12-08-00096-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *LaBARBARA OWEN BAYLESS,*<br>*APPELLANT* | § | *APPEAL FROM THE 392ND* |
| *V.* | § | *JUDICIAL DISTRICT COURT OF* |
| *ROBERT EUGENE BAYLESS,*<br>*APPELLEE* | § | *HENDERSON COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

LaBarbara Owen Bayless appeals from an order of clarification regarding spousal maintenance payments. In one issue, she contends the trial court erred in finding she was not entitled to all payments requested. We reverse and render.

## BACKGROUND

The agreed final decree of divorce ending the marriage of LaBarbara Owen Bayless and Robert Eugene Bayless was signed on January 12, 2004. The decree provided for conservatorship, support, and possession of the children and provided for the division of the marital estate. Additionally, Robert was ordered to pay LaBarbara contractual alimony in the amount of $13,025.00 per month beginning February 3, 2004 and continuing for fifty-two months. The decree provides that alimony payments "will end on February 3, 2008, providing all payments have been made." On October 31, 2007, LaBarbara filed a motion for clarification of the agreed final decree of divorce alleging a clerical error because fifty-two months from February 3, 2004 is June 3, 2008, not February 3, 2008. Based on the terms of a mediated settlement agreement signed by the parties seven months before the divorce decree was signed, LaBarbara contended that she is entitled to four monthly payments after February 3, 2008. She argued that the divorce decree is ambiguous and

requested the court clarify that the term of alimony payments ends on June 3, 2008. As exhibits to her motion, she included the divorce decree and the parties' mediated settlement agreement.

The trial court heard argument of counsel for both parties at a hearing on the motion, although no evidence was presented. Robert explained that he made only two of the seven payments due before the divorce decree was signed because he could not get the tax credit. Because of ongoing disputes, he asserted, the parties renegotiated, considering taxes and present money values, and it was agreed that he would pay $81,287.65 "in consideration of a reduction of the back end of the last four months of the spousal maintenance." As a result of this new agreement, according to Robert, the final payment would be made in February 2008 as stated in the divorce decree. He further argued that the fifty-two month term in the divorce decree should read forty-eight months. Robert explained that, based on the total amount of spousal maintenance the parties' original settlement agreement required him to pay, and considering the spousal maintenance payments he made, the $81,287.65 lump sum paid when the divorce became final, and taxes at thirty-five percent, he has overpaid. LaBarbara asserted that the $81,287.65 was paid to make up for the five pre-divorce payments he missed; therefore that money should not be attributed to the last four scheduled maintenance payments.

In its clarification order, the trial court ordered Robert to pay tax deductible spousal maintenance to LaBarbara in the amount of $18,907.81 on February 3, 2008 in complete fulfillment of the spousal maintenance contractual obligation of Robert to LaBarbara ordered in the divorce decree. Upon LaBarbara's request, the trial court entered findings of fact and conclusions of law as follows:

1. LABARBARA OWEN BAYLESS was entitled to sixty (60) spousal maintenance payments of $13,025.00 each totaling $781,500.00.

2. LABARBARA OWEN BAYLESS had received forty-nine (49) spousal maintenance payments of $13,025.00 each from ROBERT EUGENE BAYLESS totaling $638,225.00 as of January 16, 2008.

3. LABARBARA OWEN BAYLESS had also received the net sum of $107,337.65 from ROBERT EUGENE BAYLESS as of January 16, 2008.

4. LABARBARA OWEN BAYLESS was to bear the federal income tax burden on the spousal maintenance payments she received from ROBERT EUGENE BAYLESS.

2

5.  The federal income tax bracket of LABARBARA OWEN BAYLESS when she received the net figure of $107,337.65 was twenty-eight (28) percent.

6.  The federal income tax benefit received by LABARBARA OWEN BAYLESS on the $107,337.65 was $30,054.54.

7.  The sum of the forty-nine spousal maintenance payments, the $107,337.65 net figure received, and the $30,054.54 federal income tax benefit to LABARBARA OWEN BAYLESS totals $775,617.19.

8.  $775,617.19 subtracted from $781,500.00 is equal to $5,882.81, which was still due to LABARBARA OWEN BAYLESS after payment of the final spousal maintenance payment on February 3, 2008.

## CLARIFICATION ORDER

In her sole issue, LaBarbara asserts the trial court erred in finding she was not entitled to the clarification she requested. She argues that the settlement agreement between the parties provided that Robert would pay spousal payments each month for sixty months beginning June 23, 2003, which would require payments through June 2008. Further, the divorce decree provides that the February 3, 2004 payment shall be made and an additional fifty-two payments should be paid thereafter, making the final payment payable on June 3, 2008. She complains that the trial court considered Robert's attorney's argument, and conjecture, as evidence. Therefore, the trial court should have clarified the divorce decree to state that the spousal maintenance payments in the amount of $13,025.00 shall be paid on a monthly basis and end on June 3, 2008.

## Applicable Law

We review the trial court's ruling on a motion for clarification of a divorce decree under an abuse of discretion standard. *In re Marriage of McDonald*, 118 S.W.3d 829, 832 (Tex. App.– Texarkana 2003, pet. denied). The trial court abuses its discretion when it 1) acts unreasonably, arbitrarily, or without reference to any guiding rules or principles, or 2) erroneously exercises its power by making a choice outside the range of choices permitted the court by law. *Id*.

Under Section 9.006 of the Texas Family Code, "the court may render further orders to enforce the division of property made in the decree of divorce . . . to assist in the implementation of or to clarify the prior order." TEX. FAM. CODE ANN. § 9.006(a) (Vernon 2006). The court may specify more precisely the manner of effecting the property division previously made if the substantive division of property is not altered or changed. TEX. FAM. CODE ANN. § 9.006(b) (Vernon

3

2006). A trial court lacks the authority to change the property division in a final divorce decree. *McGehee v. Epley*, 661 S.W.2d 924, 926 (Tex. 1983). An order that alters the substantive division of property in a final divorce decree is "beyond the power of the divorce court and is unenforceable." TEX. FAM. CODE ANN. § 9.007(b) (Vernon 2006).

We interpret divorce decrees to determine not what the trial court should have done but, if possible, what the court actually did. *Shanks v. Treadway*, 110 S.W.3d 444, 447 (Tex. 2003). Agreed judgments are interpreted in accordance with contract law. *McKnight v. Trogdon-McKnight*, 132 S.W.3d 126, 130 (Tex. App.–Houston [14th Dist.] 2004, no pet.). We construe divorce decrees, like judgments, as a whole to harmonize and give effect to the entire decree. *Shanks*, 110 S.W.3d at 447. If, when read as a whole, the divorce decree's terms are unambiguous, we must effectuate the order in light of the actual language used. *Id*. On the other hand, if the divorce decree's terms are ambiguous, that is, subject to more than one reasonable interpretation, we must review the record along with the decree to aid in interpreting the judgment. *Id*. Whether a divorce decree is ambiguous is a question of law subject to de novo review. *Id*. Where provisions in the decree appear to conflict, they should be harmonized if possible to reflect the intentions of the parties. *Ogden v. Dickinson State Bank*, 662 S.W.2d 330, 332 (Tex. 1983) (op. on reh'g). Furthermore, no single provision taken alone will be given controlling effect; rather, all provisions must be considered with reference to the whole instrument. *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983).

**Discussion**

The divorce decree referenced several different types of payments. Under the category of Division of Marital Property, the divorce decree awarded LaBarbara, without explanation, the sum of $274,000.00, to be paid by August 12, 2003, five months before the decree was signed. Further, each party was ordered to pay certain debts, although the amounts of those debts were not stated. Under the category of Settlement of Claims, the divorce decree ordered that Robert shall pay to LaBarbara "to settle any and all claims outstanding between the parties the sum of $81,287.65 by cashier's check, at the time of prove up." There is no explanation as to what "claims" this paragraph referenced.

Under the category of Contractual Alimony, the particular payment at issue here, the divorce

decree specifically requires payment of $13,025.00 on February 3, 2004 and a payment of $13,025.00 each month for the following fifty-two months, which would make the final payment due on June 3, 2008. However, the following sentence in the decree states that the "payments will end on February 3, 2008, providing all payments have been made." Because this sentence is in the section of the decree entitled "Contractual Alimony," we construe the term "all payments" to mean the fifty-three spousal maintenance payments ordered in that section. Accordingly, the divorce decree references a total of fifty-three payments of $13,025.00, or $690,325.00. The provision for fifty-three payments can be harmonized with the "term" specified in the decree because of the insertion of the phrase "providing all payments have been made." Although it seems likely that the date named as the end of the term is a typographical error and the parties intended the term to read "June 3, 2008," the decree does not provide that alimony payments will stop on February 3, 2008 regardless of how many more payments are owed. We interpret the decree harmonizing the decree's statement of amount to be paid with its term for payment. *See **Ogden***, 662 S.W.2d at 332. Whether the $690,325.00 in spousal maintenance was paid by February 3, 2008 or June 3, 2008, once Robert had paid the full $690,325.00, the decree's requirements for contractual alimony would have been met. The divorce decree is not ambiguous.

LaBarbara's argument that clarification of the divorce decree is needed arises from the settlement agreement, which required Robert to pay her $13,025.00 for sixty months, for a total of $781,500.00, and her assertion that he has not paid her the full amount due under the settlement agreement. The settlement agreement required his first payment to be on July 3, 2003. If he continuously paid on a monthly basis for sixty months, he would make the final payment on June 3, 2008. If he never missed a payment, he would have paid her a total of $781,500.00 in spousal maintenance. The divorce decree merely reflects the assumption that Robert paid a total of $91,175.00, as he agreed to, from July 3, 2003 until January 2004 or that the parties changed their prior agreement by the time they agreed to the divorce decree. If Robert did not pay $91,175.00 between July 3, 2003 and January 2004 but was supposed to, then the divorce decree is not an accurate reflection of the parties' original agreement. However, the divorce decree was agreed to by both parties and appealed by neither; therefore, we construe the decree as written. *See **Shanks***, 110 S.W.3d at 448. Further, the divorce decree specifically provides that if there is a discrepancy

5

between the settlement agreement and the divorce decree, the divorce decree controls. If the decree failed to incorporate the parties' settlement agreement, LaBarbara's remedy was by direct appeal in 2004 and she cannot now collaterally attack the judgment. *See id*. at 449.

We hold the divorce decree unambiguously provides by its plain language that Robert is to pay LaBarbara fifty-three payments of $13,025.00, for a total of $690,325.00 in contractual alimony from the date of the divorce. In addition to contractual alimony, the decree awarded LaBarbara $274,000.00 as her portion of marital property, and $81,287.65 in settlement of any outstanding claims. Yet, in spite of the fact the divorce decree is unambiguous, the court used as its basis for ruling a term in the settlement agreement requiring Robert to pay sixty $13,025.00 payments. Then, improperly considering counsel's argument as evidence, the court determined how much of the original agreed sum was paid and assumed that the sum of $81,287.65, although designated as "Settlement of Claims," was contractual alimony. *See id*. at 447. The court then improperly debited LaBarbara for a presumed federal income tax benefit. The trial court abused its discretion when it signed the clarifying order, which impermissibly changed the substantive division of property made in the divorce decree. The trial court was without authority to reduce the awards to LaBarbara. *See McGehee*, 661 S.W.2d at 926. We therefore enforce the decree as written. *See Shanks*, 110 S.W.3d at 449. We sustain LaBarbara's sole issue.

### CONCLUSION

The trial court's clarification order attempted to change the property division in the final divorce decree and is therefore void. *See McGehee*, 661 S.W.2d at 926. Further, because the divorce decree is unambiguous, we *reverse* the trial court's order of January 30, 2008 and *render* judgment that all relief sought by LaBarbara in her motion to clarify is hereby denied.

    **BRIAN HOYLE**
Justice

Opinion delivered September 10, 2008.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*

(PUBLISH)

6