# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-22-00657-CV

---

### Josepha Mary Dattore, f/k/a Josepha Mary Sanders Harvey, Appellant

### v.

### Deborah Mann Harvey, Appellee

---

### FROM THE COUNTY COURT AT LAW NO. 2 OF WILLIAMSON COUNTY
### NO. 93-959-FC2, THE HONORABLE GARY HARGER, JUDGE PRESIDING

---

## M E M O R A N D U M   O P I N I O N

Appellant Josepha Mary Dattore appeals the trial court's denial of her petition to enforce certain property division provisions in her divorce decree. In four issues, Josepha contends that the trial court erred by (1) failing to conclude that the decree unambiguously conveys to her one-half of the net proceeds of any future sale of a property and (2) refusing to acknowledge an implied vendor's lien on that property, (3) awarding attorney's fees to appellee Deborah Mann Harvey, and (4) that the trial court's order cannot be affirmed based on Deborah's defensive theories.[1]  We affirm.

---

[1]  Because both parties had the same surname at times relevant to this appeal, we will refer to them by their first names to avoid confusion.

## BACKGROUND

Josepha and her ex-husband Jon Nolan Harvey (Jon) divorced in 1993. Their divorce decree incorporates and adopts an agreement by the parties entitled "Property Statement and Settlement," which divides the assets and liabilities of the parties. As part of the division of the marital estate, the decree awards Jon a property in Williamson County (the Property) using the following language:

<u>Assets – Real Property</u>
A

Respondent, JON NOLAN HARVEY, shall take as his sole and separate property, and Respondent, JOSEPHA MARY SANDERS HARVEY, is divested of any right and title in the parties' homestead . . .

The dwelling and all items contained in said dwelling and acreage in Georgetown is to be secured in the name of JON NOLAN HARVEY, who will then assume sole responsibility for all liabilities (i.e. mortgage payments, physical repairs, property improvements, property taxes, insurance, etc.), as well as benefits (i.e. interest deductions, personal use, etc.) associated with said dwelling. Title and deed of Georgetown house and property shall be in the sole name of JON NOLAN HARVEY.

If JON NOLAN HARVEY for any reason fails to meet the monthly mortgage payments, house and/or acreage will be sold. JOSEPHA MARY SANDERS HARVEY will not in any way be held liable for any mortgage payments, physical repairs, property improvements, property taxes, insurance, etc. In the event of sale of said dwelling and/or acreage by JON NOLAN HARVEY, it is agreed that Josepha M. Sanders Harvey will become the recipient of one-half (1/2) of net profit of said sale. In the event of the death of Josepha M. Sanders Harvey before the sale of this property, the amount of one half (1/2) of net profit of said sale will go to the estate of Josepha M. Sanders Harvey.

Net profit is to be calculated at gross sales price, less applicable closing costs, less loan balance being held by FFB Mortgage Capital Corporation

of Austin, Texas as of the date of the final divorce decree (est. loan balance $99,000.00 as of 8/1/93 for the dwelling alone).[2]

The decree describes a property in Travis County as Real Property Asset B. It states that Jon is divested of any right and title to the Travis County property and awards Josepha one hundred percent of the proceeds from the sale of the Travis County property and all benefits associated with it (i.e., interest deductions, personal use, etc.). The decree also awards to Josepha as Personal Property Assets a vehicle, a checking account, a savings account, and jewelry. Under the language of the decree, all debt was awarded to Jon, and Josepha was awarded no debt.

After the decree was finalized, Jon continued to reside on the Property, and he married Deborah in 1998. Jon and Deborah paid off the mortgage to the Property in 2006. In April 2017, Jon passed away intestate. Deborah is the real party in interest in this lawsuit because Jon's other heirs conveyed any interest in the Property to Deborah as Jon's widow.

In 2021, Josepha filed a petition for enforcement of property division seeking (i) a forced sale of the Property and payment of one-half of the net proceeds and (ii) enforcement of an implied vendor's lien allegedly created by the decree. In response, Deborah filed a petition for clarification of property division, arguing that the decree unambiguously awarded the Property to Jon.[3]

---

[2] These three paragraphs are recited verbatim in the Property Statement and Settlement Agreement, which was attached to the decree.

[3] Both parties agreed that certain language used in the decree to identify real property should be clarified.

After a bench trial, the trial court rendered a final judgment that denied Josepha's petition for enforcement and granted Deborah's petition for clarification. The trial court made the following findings:

- The Court FINDS that the Final Decree of Divorce was drafted by an attorney selected and paid for by Josepha Mary Dattore f/k/a Josepha Mary Sanders Harvey.[4]

- The Court FINDS that the language of the Final Decree of Divorce dated October 5, 1993 is neither vague nor ambiguous except for the property descriptions as clarified below.

- The Court FINDS that the real property described in Exhibits 1-4 of this clarification was confirmed by the clear language of the Final Decree of Divorce to be the separate property of Jon Nolan Harvey as of October 5, 1993, free of all liens and encumbrances, save and except the mortgage existing at the time of the entry of the Final Decree of Divorce.

The trial court also awarded Deborah attorney's fees.

Josepha appeals. Based on the following analysis, we find no error in the trial court's judgment.

**ANALYSIS**

In her first issue, Josepha argues that the trial court erred when it denied her petition to enforce because the decree unambiguously gave her a right to half of the net profits of any future sale of the Property. We review a trial court's ruling on a petition for enforcement or clarification of a divorce decree for an abuse of discretion. *See Gainous v. Gainous*, 219 S.W.3d 97, 103 (Tex. App.—Houston [1st Dist.] 2006, pet. denied); *In re Marriage of McDonald*, 118 S.W.3d 829, 832 (Tex. App.—Texarkana 2003, pet. denied). A trial court

---

[4] Josepha testified at trial that she paid the attorney to draft the decree and that the attorney who drafted the decree never spoke to Jon.

abuses its discretion when it acts unreasonably, arbitrarily, or without reference to any guiding rules or principles. *See Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990).

We interpret agreed divorce decrees under the rules of contract construction. *McCain v. McCain*, 636 S.W.3d 679, 690 (Tex. App.—Austin 2021, no pet.) (citing *Rudolph v. Jamieson*, No. 03-17-00693-CV, 2018 WL 2648514, at *4 (Tex. App.—Austin June 5, 2018, pet. denied) (mem. op.)); *see also Allen v. Allen*, 717 S.W.2d 311, 313 (Tex. 1986) (explaining that marital property agreement incorporated into divorce decree is treated as contract and governed by law of contracts). We construe divorce decrees as a whole to give effect to the entire decree. *Hagen v. Hagen*, 282 S.W.3d 899, 901 (Tex. 2009). If the decree's language can be given a definite or certain legal meaning, it is not ambiguous, and we construe the decree as a matter of law. *Coker v. Coker*, 650 S.W.2d 391, 393–94 (Tex. 1983). If the terms of the divorce decree are ambiguous or susceptible to two or more reasonable interpretations, we interpret the decree by reviewing both the decree as a whole and the record. *See Hagen*, 282 S.W.3d at 901; *American Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 157 (Tex. 2003). Ambiguity does not arise simply because the parties disagree over a contract's meaning. *Schaefer*, 124 S.W.3d at 157; *see also Kelley-Coppedge, Inc. v. Highlands Ins. Co.*, 980 S.W.2d 462, 464 (Tex. 1998) (explaining that ambiguity does not arise merely because parties advance conflicting contract interpretations). Whether a divorce decree is ambiguous is a question of law. *Shanks v. Treadway*, 110 S.W.3d 444, 447 (Tex. 2003).

A final, unambiguous divorce decree that disposes of all marital property bars relitigation. *Pearson v. Fillingim*, 332 S.W.3d 361, 364 (Tex. 2011). Seeking "an order that alters or modifies a divorce decree's property division is an impermissible collateral attack." *Hagen*, 282 S.W.3d at 902; *see* Tex. Fam. Code § 9.007(a)–(b). However, "[u]nder the Family

Code, the court that renders a divorce decree retains jurisdiction to clarify and enforce the property division within that decree." *Pearson*, 332 S.W.3d at 363; *see* Tex. Fam. Code § 9.006(a) (providing that court may render further orders to enforce division of property made in prior divorce decree). But the trial court may not "amend, modify, alter, or change the division of property" originally made in the decree. Tex. Fam. Code § 9.007(a).

On appeal, Josepha states that the decree unambiguously conveyed her one-half ownership interest in the Property to Jon. She argues that, as consideration for her one-half ownership interest in the Property, the decree provides that she receives one-half of the net profit from any future sale of the Property. She asserts that there is no rationale for tying her receipt of profits from the sale of the Property to Jon's default on the mortgage. Deborah responds that the language reciting that Josepha receives proceeds of the sale of the Property is conditional: the decree recites that if Jon defaults on the mortgage, the Property will be sold. And only "[i]n the event of sale" at default by Jon does Josepha become the recipient of profits. Deborah contends that the decree does not state that Josepha receives profits "when" the Property is sold, but only "[i]n the event of sale" upon Jon's default.

The trial court did not abuse its discretion by denying Josepha's petition based on its construction of the unambiguous terms of the decree. First, the decree unambiguously awards Jon the Property and divests Josepha of any ownership interest in the Property. The decree states that Jon "shall take as his sole and separate property," and Josepha "is divested of any right and title in the parties' homestead . . . ," which is the Property. It also provides that "[t]he dwelling and all items contained in said dwelling and acreage in Georgetown is to be secured in" Jon's name and that the "[t]itle and deed of Georgetown house and property shall be in the sole name of JON NOLAN HARVEY."

6

Second, the language in the decree unambiguously grants the benefits of the Property to Jon only, which includes future appreciation. The decree states that:

> The dwelling and all items contained in said dwelling and acreage in Georgetown is to be secured in the name of JON NOLAN HARVEY, who will then assume sole responsibility for all liabilities (i.e. mortgage payments, physical repairs, property improvements, property taxes, insurance, etc.), as well as benefits (i.e. interest deductions, personal use, etc.) associated with said dwelling.

Finally, the only sale of the Property contemplated by the decree was a sale upon Jon's default of the mortgage. But this default never occurred because Jon paid the mortgage in full in 2006. When harmonizing contract provisions, terms stated earlier in an agreement must be favored over subsequent terms. *Coker*, 650 S.W.2d at 393. Therefore, provisions in the decree that describe what occurs in the event of a sale of the Property are subject to the language describing what triggers a sale. *See id.* Under a plain-language reading of the decree, if Jon defaults on the mortgage, the sale occurs and Josepha then receives proceeds from the sale. The decree states that "[i]f Jon Nolan Harvey for any reason fails to meet the monthly mortgage payments, house and/or acreage will be sold," and Josepha will not be held liable for mortgage payments, property taxes, etc. "In the event of sale of said dwelling and/or acreage by JON NOLAN HARVEY. . . Josepha M. Sanders Harvey will become the recipient of one-half (1/2) of net profit of said sale."[5]

---

[5] Josepha cites *Perry v. Perry* to support her argument. *See* 512 S.W.3d 523, 528 (Tex. App.—Houston [1st Dist.] 2016, no pet.) (concluding that provisions of divorce decree were subject to reasonable interpretation that husband is awarded possession of house and is responsible for selling house and wife is divested of any interest in house except for right to one-half of profits of sale). Because the divorce decree in *Perry* did not specify the terms under which the house would be sold, the court concluded that it would be sold within a reasonable time and for a reasonable price because this harmonized the provisions in the divorce decree. *Id.* Unlike *Perry*, the decree in the present case unambiguously awards Jon ownership of the

Josepha argues that the sentence in the decree that states that if she dies "before the sale of the Property, the amount of one half (1/2) of the net profit of said sale will go to" her estate proves that the parties intended for her to receive proceeds of any sale at any time in the future. Deborah responds that this language was included because, as the decree notes, the mortgage balance was $99,000.00 at the time of the divorce. We conclude that this latter interpretation considers the entire writing so that no single provision alone is given controlling effect. *See id*. Adopting an interpretation that affords meaning to all portions of the decree, *see id.* at 394, we also conclude that the provision regarding payment to Josepha's estate in the event of her death does not conflict with language stating that if Jon defaults on the mortgage a sale would occur. The trial court therefore did not abuse its discretion by denying Josepha's request to alter the division of property after construing the unambiguous terms of the decree. *See* Tex. Fam. Code § 9.007(a)–(b). We overrule Josepha's first issue.

In her second issue, Josepha argues that the trial court erred by failing to conclude that the decree created an implied vendor's lien on the Property and ordering that the Property be sold at a reasonable time and for a reasonable price. Josepha contends that her agreement to convey her ownership interest in the Property to Jon in exchange for future payment of one-half of the proceeds from the future sale of the Property created an implied vendor's lien. Deborah responds that an implied vendor's lien was not created because the decree does not contain clear

_____

Property and divests Josepha of any ownership interest in the Property and specifies that the Property will be sold if Jon defaults on the mortgage. The trial court was without power to alter the division of property approved in the decree by ordering a forced sale of the Property after Jon paid off the mortgage and years after his death. *See* Tex. Fam. Code § 9.007(b) (explaining that order that alters division of property approved in final decree is beyond power of court and is unenforceable).

8

language stating that an amount of consideration was exchanged for the party's interest in the property, but instead recites that the exchange was part of the just and right division of the estate.

When a divorce decree approves a settlement agreement by which one spouse agrees to pay a sum of money in consideration for the other spouse's interest in a property, but the purchase money is not paid and the deed to the property contains no express lien, an implied vendor's lien arises in favor of the conveying spouse to secure payment of that purchase money. *See McGoodwin v. McGoodwin*, 671 S.W.2d 880, 882 (Tex. 1984). In *McGoodwin*, the Texas Supreme Court found that an implied vendor's lien arose after one spouse expressly contracted to pay $22,500.00 as consideration for the conveyance of the other spouse's one-half interest in a tract of land, and the purchase money remained unpaid at the time of the divorce decree. *Id.* However, courts have declined to impose an implied vendor's lien if the language of the decree or agreement does not clarify that specified consideration is exchanged for the conveyance of the other party's property interest. *See McNally v. McNally*, No. 02-18-00142-CV, 2020 WL 5241189, at *8 (Tex. App.—Fort Worth Sept. 3, 2020, pet. denied) (mem. op.) (concluding that equitable vendor's lien was not created because no language in decree reflected that promissory note was consideration for one-half interest in property and decree stated that division of property was just and right); *Cole v. Cole*, 880 S.W.2d 477, 484–85 (Tex. App.—Fort Worth 1994, no writ) (declining to impose equitable lien because court could not conclude that promissory note was solely to compensate spouse for her share of homestead, although court acknowledged that some portion of payment included compensation for wife's interest in homestead).

Unlike the settlement agreement in *McGoodwin*, 671 S.W.2d at 882, which expressly stated that the husband agreed to pay $22,500.00 as consideration for the wife's

9

one-half interest in a tract of land, neither the decree nor the underlying agreement in this case states that Jon agreed to pay Josepha specific consideration for her one-half interest in the Property. The decree states that the parties "entered into an agreement providing for the division of all assets and liabilities of the parties," evidenced by their signatures on the underlying agreement. The decree adopts and incorporates the underlying agreement and orders the "division of the parties' marital estate," which the trial court found "just and right having due regard for the rights of each party." Although the underlying agreement includes language that requires the sale of the Property upon Jon's default and for Josepha to receive profits if that default sale occurs, that is not the entire agreement. The underlying agreement and decree also award Josepha property in Travis County, a checking account, a savings account, and a vehicle, and they award all debt to Jon. Therefore, nothing in the decree or underlying agreement expressly states that the conditional grant of future net proceeds was solely an exchange of consideration and not part of the larger "just and right" division of the marital estate. Thus, the trial court did not abuse its discretion by denying Josepha's petition based on its conclusion that the decree did not imply a vendor's lien on the Property.[6] *See Cole*, 880 S.W.2d at 484–85.

In her third issue, Josepha argues that, if we reverse the trial court's order, we should also reverse the trial court's award of attorney's fees and costs to Deborah because there will no longer be a basis on which to sustain the award. Having concluded that the trial court did not abuse its discretion by denying Josepha's petition for enforcement based on the issues raised

---

[6] Because we conclude that the trial court did not abuse its discretion by denying Josepha's petition based on its conclusion that the decree did not create an implied vendor's lien on the Property, we need not address Josepha's fourth issue, that the trial court's order cannot be affirmed based on Deborah's affirmative defensive theories such as estoppel and laches. *See* Tex. R. App. P. 47.1.

10

on appeal, we overrule Josepha's request that we also reverse the trial court's attorney's fee award.

## CONCLUSION

We affirm the trial court's judgment.

_____
Edward Smith, Justice

Before Justices Baker, Kelly, and Smith

Affirmed

Filed:   December 27, 2024